In re Willie SIMS and Betty Sims.

Charles E. MOSLEY and Mary
E. Mosley, plaintiffs,

v.

Willie SIMS and Betty Sims, defendants.

Bankruptcy No. 91–30399 S.
Adv. No. 91–3033.

United States Bankruptcy Court,
E.D. Arkansas,
Jonesboro Division.

Dec. 22, 1992.

MEMORANDUM OPINION

MARY D. SCOTT, Bankruptcy Judge.

THIS CAUSE is before the Court upon the trial of the complaint to determine dischargeability and objection to discharge, filed on January 21, 1992, setting forth two counts. Count I requested that the Court determine the debt in the amount of $40,-036 is nondischargeable by virtue of a state court judgment based on breach of warranty and fraud, citing 11 U.S.C. § 523(a)(4), (6). At the pretrial stage of litigation, the plaintiffs abandoned their cause of action under section 523(a)(4), electing to proceed on the action for wilful and malicious injury based upon alleged fraudulent conduct of the debtors.

Count II, pleaded in the alternative, contains an objection to discharge, alleging the following grounds: (1) that the debtors sold assets within ninety (90) days of the filing of their petition, but failed to list those transactions on their petition; (2) the debtors failed to properly list their income and expenses; (3) the debtors failed to schedule all the property they own, including a mobile home. 11 U.S.C. § 727(a)(2), (3), (4).

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b) as exemplified by 28 U.S.C. § 157(b)(2)(I), (J).

I. *Dischargeability*

On June 19, 1991, the Circuit Court of Mississippi County, Arkansas entered judgment in favor of the plaintiffs Charles and Mary Mosley against the defendants Betty and Willie Sims. The judgment sets forth the special interrogatories answered by the jury, including the findings by the jury that the Sims were guilty of negligence, breach of the warranty of title, and fraud against the Mosleys. The jury awarded punitive damages based upon the fraudulent conduct of the Sims. The total amount of the judgment against the Sims was $40,036 together with interest. The bankruptcy petition was filed on June 27, 1992, eight days later.

The Mosleys correctly argue that collateral estoppel applies to preclude relitigation of the issue of fraud. *See Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 658 n. 11, 112 L.Ed.2d 755 (1991) ("We now clarify that collateral estoppel principles do indeed apply in discharge exception pro-

ceedings pursuant to § 523(a)."); *Johnson v. Miera* (*In re Miera*), 926 F.2d 741 (8th Cir.1991). Fraud constitutes a willful and malicious injury within the meaning of section 523(a)(6). *See Grogan v. Garner,* 111 S.Ct. 654, 657 n. 2; *Huntington National Bank v. Parton* (*In re Parton*), 137 B.R. 902 (Bankr.S.D.Ohio 1991) (section 523(a)(6) relates to intentional torts).

■ In order to apply collateral estoppel, four elements must be present:

(1) the issue sought to be precluded must be the same as that involved in the prior action;

(2) the issue must have been litigated in the prior action;

(3) the issue must have been determined by a valid and final judgment; and

(4) the determination must have been essential to the prior judgment.
*Miera,* 926 F.2d at 743.

There is no question that each of these elements is met. The state court proceeding in fraud proceeded to jury trial and judgment after full litigation of all of the issues. Further, the elements of fraud under state law and, as applied to this proceeding, are virtually identical. *See Thul v. Ophaug,* 827 F.2d 340, 342 (8th Cir.1987). Accordingly, all of the issues necessary for a determination of fraudulent conduct in a dischargeability proceeding have been previously litigated in the state court action such that collateral estoppel must be applied. *See Miera,* 926 F.2d 741. Having been found guilty of fraud in the state court, the debts stated in the judgment for fraud are nondischargeable pursuant to section 523(a)(6).[1]

■ The amount of nondischargeable debt includes not only actual damages, but also punitive damages, *Miera,* 926 F.2d at 745, and attorneys fees, *Littlefield v. McGuffey* (*In re McGuffey*), 145 B.R. 582, 596–97 (Bankr.N.D.Ill.1992); *see Miera,* 926 F.2d at 745 ("The language of section 523(a)(6) is directed at the nature of the conduct which gives rise to the debt, rather than the nature of the debt."). Accordingly, the debt in the amount of $40,036 plus interest according to law, is nondischargeable in this bankruptcy proceeding.

## II. *Discharge*

■ The policy in favor of a fresh start is balanced by the duty of disclosure. The duty of disclosure is a basic prerequisite to obtaining a discharge in bankruptcy. *Nassau Savings and Loan Association v. Trinsey* (*In re Trinsey*), 114 B.R. 86, 91 (Bankr.E.D.Pa.1990). Creditors are entitled to know what happened to the debtor's assets which might have satisfied debts. The nondisclosure or disappearance of assets, without documentation or sufficient explanation, upends the tendency to favor the fresh start. Section 727(a), provides in pertinent part:

The court shall grant the debtor a discharge, unless,

(2) the debtor, with the intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—

(A) property of the debtor, within one year before the date of the filing of petition; or

(B) property of the estate, after the date of the filing of the petition;

&ast; &ast; &ast; &ast; &ast; &ast;

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;
&ast; &ast; &ast;

11 U.S.C. § 727(a)(2), (4).

■ The Court finds that the plaintiffs have met their burden of proof with respect to paragraphs (2) and (4). The Bankruptcy Code requires the debtor to list all assets and transactions, and fully answer the questions in the petition, under oath.

---

1. The debt is also nondischargeable by virtue of section 523(a)(2)(A). This Court also finds that, even were collateral estoppel not applied, the plaintiffs demonstrated as a factual matter that fraud existed such that the debt is nondischargeable.

Omissions from the schedules may qualify as false oath if they are made knowingly and with fraudulent intent. *In re Graham,* 111 B.R. 801 at 806 (Bankr.E.D.Ark. 1990). Further, the debtors transferred assets prior to the petition, but failed to disclose the transfers and also transferred assets after the filing of the petition.

■ The debtors signed a voluntary petition, schedules of assets and liabilities, and a statement of financial affairs, all under penalties of perjury. These written declarations have the force and effect of oaths. *In re Sanders,* 128 B.R. 963 (Bankr. W.D.La.1991). The debtors have failed to truthfully report their assets and transactions in several respects.

1. The debtors misstated their net income by nearly $1,000 per month. The petition reflects that the debtors gross income is $1,600 per month. From that figure, debtors deducted taxes, insurance, and retirement for a net monthly income of $582.28. In fact the debtor's net income is $1,600 per month.

2. The debtors misstated a monthly expense thereby exaggerating their expenses by over $450 per month. The debtors state a monthly household maintenance expense of $500 per month. In fact, the listed $500 is a yearly expense.

3. The debtors own a forty by sixty foot pole barn which they failed to list on the schedules. Further, the barn is full of property which they own and hold for others. The contents of the barn are not referenced on the schedules.

4. The debtors bought and sold numerous vehicles in the months just prior to and following the filing of the bankruptcy, few of which were listed on the schedules. Indeed, the debtors properly list only three of at least nine vehicles in which they had an interest or which were transferred prior to and during the bankruptcy. The schedules list two sales: a 1980 Ford truck sold to Mr. Sims' father for $500 and a 1985 Cadillac. The schedules also list a 1977 Mercury Cougar which the debtors intend to retain. Oddly, the Mercury Cougar is not listed on the debtors 1992 Arkansas personal property tax assessment. While not properly listing the asset, the debtors indicated an intent to surrender a 1988 Corsica.

Transactions regarding at least five other vehicles were not listed or even referenced on the schedules. Two or more of the vehicles were purportedly property of the debtors' daughter. Title was placed in the debtors' name because the daughter had a habit of wrecking her vehicles such that she could not obtain insurance. Accordingly, the debtors held title to a 1984 Ford Escort. When this vehicle was wrecked, the insurance check was made payable to the debtors. The daughter then destroyed a 1983 Thunderbird titled in the debtors' name, the insurance check for which was also made payable to the debtors. Title to the daughter's next vehicle was held by the debtors until the time of the state-court fraud trial. At that time, the debtors found it more convenient not to own property. The debtors also failed to disclose this transaction.

While the Court does not doubt the import of the debtors' testimony that they were simply defrauding the insurance company rather than intending to defraud their own creditors, the transactions regarding these vehicles were required to be stated on the schedules. It is not for the debtors to decide whether or not to list the property. If, as the debtors assert, these vehicles belonged to the daughter, that should have been stated on that portion of the schedules listing property held for another. The daughter's vehicles were not listed.

Several other transfers of vehicles also were not reported. The 1985 Cadillac was exchanged for a 1986 Lincoln Continental which was later sold. The latter sale was not listed on the petition. It further appears that two other vehicles, the origin of which has not been disclosed, were sold within the last several months. The debtor Willie Sims explained that, "I trade cars all the time like some people go fishing and hunting." The fact that the debtor trades cars as a hobby does not obviate the duty to maintain records regarding the transactions and to list all of the transactions made within a year prior to the bankruptcy.

5. The debtors did not properly report a loan from Willie Sims' father. Just prior to the bankruptcy, the debtor transferred the 1980 Ford Truck to his father in exchange for cancellation of a $1,700 debt plus $500 cash. While the facts of this particular transaction are not clear,[2] on the date of the filing of the petition, the debtors either still had title to the truck but failed to list title on the schedules, or there was outstanding a loan from the debtors' father which was not listed on the schedules. Either of these omissions constitutes a material omission.

■ 6. The debtors sold assets approximately three to four hours prior to the bankruptcy filing. This sale was not reported on the schedules. The debtors' assertion that these items were merely "junk" does not correct the problem. The Bankruptcy Code requires disclosure of all assets and transactions. The creditors and trustee are entitled to the disclosure; the value of the items is irrelevant.

7. The debtors made payments to their state-court litigation attorney just prior to the bankruptcy of between $1,500 to $2,000. These payments were not disclosed on the petition.

■ This recitation makes it clear that there are a number of material misstatements on the schedules and unreported transfers of property. The cumulative nature of the misstatements exacerbates the materiality of the omissions. The issue thus becomes whether these false statements were knowingly and wilfully made. In order for a false statement under oath to serve as a basis for a denial of discharge, the statement must be known by the debtor to be false and be made wilfully with an intent to defraud. This intent can be established by circumstantial evidence. *In re Sanders,* 128 B.R. 963. Moreover, statements made with reckless indifference to the truth are regarded as intentionally false. *Id.*

■ In this case, the Court concludes that the debtors acted knowingly and wilfully with intent to defraud. It is notewor-

thy that many of the transfers occurred during the time the state court litigation was concluding and just prior to the filing of the bankruptcy petition. The debtors were rapidly removing their name from assets in an attempt to shield them from attachment by the Mosleys, their primary creditors. Further, several of the transactions the debtors neglected to report involve family members, another indicia of fraud. *Ingersoll v. Kriseman (In re Ingersoll),* 124 B.R. 116, 121 (M.D.Fla.1991). These factors indicate to the Court the fraudulent intent of the debtors. The schedules clearly call for the debtors to disclose their transactions and accurately list property, income, and expenses. The debtors have offered no credible explanation for so many errors and omissions on their schedules.

■ Instead, Willie Sims asserts that he merely "glanced over" the petition but "didn't really understand it." However, the Bankruptcy Code requires more than a "glance over" in reporting assets and transactions. Indeed, a mere "glance over" constitutes a cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor. It is not for the debtors to determine what is important enough to be reported. All assets and transactions must be reported, even if the assets are worthless or unavailable to creditors. *Barnett Bank of Tampa v. Muscatell,* 113 B.R. 72, 74 (Bankr.M.D.Fla.1990); *see Palatine National Bank of Palatine v. Olson,* 916 F.2d 481, 484 (8th Cir.1990). The written declarations on the petition and schedules have the force and effect of oaths. A mere "glance over" merely corroborates the evidence that the debtors recklessly or wilfully made a false oath within the meaning of section 727(a)(4) and transferred assets with the intent to defraud a creditor within the meaning of section 727(a)(2).

ORDERED that judgment shall be entered in favor of the plaintiffs Charles E. Mosley and Mary E. Mosley and against the defendants Willie E. Sims and Betty

---

**2.** The explanation of this transaction differed each time it was related.

Sims determining that the debt in the amount of $40,036 plus interest according to law, owed by debtors to Charles E. Mosley and Mary E. Mosley is nondischargeable. In addition, the discharge of the debtors will be denied.

IT IS SO ORDERED.