**In re Perry D. HATTON and Candace A. Hatton, Debtors.**

**Perry D. HATTON and Candace A. Hatton, Appellants,**

v.

**Michael H. SPENCER, Appellee.**

Civil Action No. 2:96cv918.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 16, 1997.

Stephen Gary Merrill, Ghent Law Offices, Norfolk, VA, Edward F. Halloran, Kempsville Law Offices, Virginia Beach, VA, for Appellants.

Harry William Jernigan, III, Virginia Beach, VA, for Appellee.

## *OPINION*

REBECCA BEACH SMITH, District Judge.

This matter is before the Court on appeal, pursuant to 28 U.S.C. § 158(a), from an opinion and order of the United States Bankruptcy Court for the Eastern District of Virginia entered August 5, 1996. For the reasons stated below, the bankruptcy court's order is AFFIRMED.

### I. FACTUAL AND PROCEDURAL HISTORY

The initial litigation between the parties to this appeal arose in the context of a landlord-tenant dispute. Following litigation concerning the dispute, the appellee, Michael H. Spencer, received a money judgment against the appellants, Perry and Candace Hatton, for breach of contract following a trial in state court. Before the judgment was actually entered, the Hattons filed for bankruptcy. Upon motion of Spencer and in light of the numerous inaccuracies and misstatements contained within the Hattons' bankruptcy schedules, the bankruptcy court denied the Hattons' discharge. This appeal followed.

Spencer is a creditor in the Hattons' bankruptcy proceeding by virtue of his status as the debtor's former lessor. Spencer leased a house to the Hattons, pursuant to a six-year lease dated February 18, 1984; this lease was later extended to December 31, 1993. Among its other terms, the lease required the Hattons to maintain the premises, as well as the house's systems. In 1991, Spencer, apparently concerned that the Hattons were not living up to their responsibilities, wrote a letter to remind them of their contractual

obligations. Similarly, in June 1993, Spencer sent a letter chiding the Hattons for failing to care properly for the house's air conditioning system. That same month, while painting the house's exterior, Spencer entered the house and discovered the extent of its disrepair, general untidiness and dilapidation. While inside, Spencer took numerous photographs to document the state of affairs; the bankruptcy court, upon examining the pictures, described the Hattons' lifestyle as "slovenly," "squalid," and "shocking to one's sense of civility." *In re Hatton*, 204 B.R. 470, 472–73, 474, 474 (Bankr.E.D.Va.1996).

On November 27, 1993, the Hattons informed Spencer that they would terminate the lease and vacate the premises on December 31, 1993. Spencer examined the premises on January 1, 1994, and discovered the same level of filth and decay witnessed earlier. As a result of the Hattons' failure to leave the house in a reasonable condition, Spencer brought suit in General District Court. The Hattons thereupon removed the case to the Circuit Court of Virginia Beach, where a jury found for Spencer and awarded $4,890.28 in damages and fees. Fearful that garnishment proceedings would be employed to collect the judgment, the Hattons filed a joint Chapter 7 proceeding on August 4, 1995.[1] On September 7, 1995, Spencer's judgment was actually entered by the circuit court.

Attendant to their decision to seek bankruptcy protection, the Hattons filed their petition, schedules, and statement of affairs (collectively the "schedules") with the bankruptcy court. These schedules were, as the bankruptcy court would later describe them, "sloppy, inconsistent, inaccurate and misleading." *Hatton*, 204 B.R. at 473. These errors first came to light on September 5, 1995, during the Section 341 creditors' meeting.[2] The eight "most prominent of the deficiencies," as detailed in the bankruptcy court's August 5, 1996 order, are as follows: (1) the

Statement of Affairs ¶ 3(a) indicates that no payments in excess of $600 were made within 90 days of the filing of the petition, when in fact a payment of $1,427.79 to Thousand Trails was made on behalf of the Hattons by Mrs. Hatton's sister; (2) the Statement of Affairs ¶ 3(b) indicates that no payments to insiders had been made within twelve months of the filing when in fact the Hattons had paid $100 in each of the preceding months to Mrs. Hatton's mother; (3) although they indicated on Schedule B that they had no interest in a life insurance policy, Mr. Hatton's policy actually had a net cash surrender value of $923.27; (4) rather than separately value various items of personal property in Schedule B, the Hattons lumped together 44 items of "Household goods and furnishings" and assigned to them an aggregate value of $2,283.00; (5) in the Statement of Affairs Mrs. Hatton listed her year-to-date salary as $8,132.20, when in fact her gross income for the period was at least $11,959.13 (an understatement of 32 percent); (6) in the Statement of Affairs Mr. Hatton listed his year-to-date salary as $11,432.76, when in fact his gross income for the period was $13,366.86 (an understatement of 14.47 percent); (7) the Hattons fail to mention anywhere in the schedules the fact that they had pending against Spencer a $50,000 damages claim; (8) the Hattons stated on Schedule F, the listing of unsecured debt, that the great bulk of their unsecured (mainly credit card) debt was incurred in the two months immediately preceding the bankruptcy. The Hattons filed various amendments to their schedules on November 3, 1995. While many earlier inaccuracies were corrected in this subsequent filing, other new ones were created. For example, the Hattons, in the amended Schedule J, included as a current monthly expenditure a $250 auto payment for a car they did not own, but simply contemplating buying in the future.

After the Trustee failed to take any action concerning the Hattons' misstatements, Spencer commenced an adversary proceed-

---

1. Based on the record, the Hattons' financial situation, and the facts presented at trial, the bankruptcy court concluded that the "bankruptcy filing was targeted at one specific creditor, namely Spencer." *Hatton*, 204 B.R. at 477.

2. Section 341 of the Bankruptcy Code provides that "[w]ithin a reasonable time ... the United States trustee shall convene and preside at a meeting of creditors." 11 U.S.C. § 341(a).

ing before the bankruptcy court to determine the dischargeability of the Hattons' debt to him, pursuant to 11 U.S.C. § 523, and on a general objection to a discharge of debt pursuant to 11 U.S.C. § 727. The Hattons answered on April 3, 1996. On April 23, 1996, the bankruptcy court conducted its Initial Pretrial Conference; neither the Hattons nor their counsel were in attendance. The court's Initial Pretrial Order, entered the following day, required, *inter alia*, that the parties must each file a list of proposed exhibits and witnesses at least ten days before trial. Because the Hattons failed to file anything, the court prohibited them from calling any witnesses during the July 11, 1996 adversary proceeding. The Hattons' attorney was afforded the opportunity, however, to cross-examine extensively all three parties to the action.[3]

The bankruptcy court's opinion and order, issued on August 5, 1996, made note of the most egregious of the schedules' inaccuracies. Based on the perceived seriousness of the misstatements, the court declared Spencer's $4,890.28 judgment to be nondischargeable pursuant to 11 U.S.C. § 523(a)(6), on the grounds that the Hattons' damage to the property constituted "willful and malicious injury." More importantly, however, the court also concluded that the Hattons' pattern of omissions and errors smacked of fraud and willful conduct and hence ordered a general denial of discharge of the Hatton's debt, pursuant to 11 U.S.C. § 727(a)(2) and (4). On August 15, 1996, the Hattons filed their Notice of Appeal. They filed their supporting memorandum on November 1, 1996. Spencer filed his brief on November 18, 1996, and the Hattons replied on December 2, 1996.

## II. DISCUSSION

The Hattons present five issues on this appeal: (1) whether the bankruptcy court acted properly in denying a discharge of the Hattons' debt pursuant to 11 U.S.C.

§ 727(a)(2) and (4); (2) whether the bankruptcy court was correct in concluding that the judgment amount obtained by Spencer from a state court jury precluded the bankruptcy court from relitigating the issues of whether the Hattons' mistreatment of Spencer's house was willful and malicious; (3) whether the bankruptcy court was correct in determining that the Hattons' debt to Spencer is nondischargeable under 11 U.S.C. § 523(a)(6); (4) whether the bankruptcy court erred procedurally in not permitting the Hattons to present evidence at the adversary proceeding; and (5) whether the bankruptcy court erred in allowing Spencer to present new evidence following the close of the adversary proceeding.

Two of these issues do not need to be addressed. Issue two, which involves the circumstances under which the Hattons' debt to Spencer arose, and issue three, which concerns the dischargeability of debt pursuant to section 523, need not concern this court. As the Hattons conceded in their brief to this court, a decision that the bankruptcy court acted appropriately pursuant to section 727 in denying a discharge of the Hattons' entire debt clearly obviates the need to conduct an inquiry to determine whether one of the Hattons' individual debts is nondischargeable under section 523. *See In re Johnson*, 139 B.R. 163, 164 n. 3 (Bankr. E.D.Va.1992) (observing that "[b]ecause we deny the Debtor a discharge pursuant to § 727(a)(4)(A), we do not address the potential exceptions to discharge of particular debts pursuant to § 523(a)"). Because issue two is a subissue in the bankruptcy court's section 523 ruling, this court need not rule on it either.

### A. Denial of Discharge Pursuant to 11 U.S.C. § 727(a)(4)

At the heart of the Hattons' appeal lies their objection to the bankruptcy court's decision to deny a discharge of debt pursuant to 11 U.S.C. § 727(a)(4).[4] This section,

---

**3.** Following the July 11, 1996 hearing, but before the bankruptcy court issued its opinion and order, Spencer filed a Motion for New Trial for the purposes of bringing new evidence to the court's

attention. A discussion of this motion and its brief history is contained in Part II. C., *infra.*

**4.** The bankruptcy court denied a discharge of debt after finding that the requirements of both

which punishes debtors who have knowingly and fraudulently made false statements by denying them a discharge of their debts, has been the subject of extensive analysis by other courts. A review of this authority, performed in light of the bankruptcy court's factual findings, which must be accepted because they are not clearly erroneous, indicates that the bankruptcy court acted properly in denying the Hattons' discharge pursuant to section 727(a)(4).

The Hattons note that a general denial of discharge pursuant to section 727 is a harsh sanction, and argue that the facts of the case do not warrant it. While they do not dispute that their schedules were riddled with errors and omissions, they maintain that the mistakes derived, not from willful misconduct or fraud, but rather constituted harmless mistakes born of an innocent, first-time bankrupt's naivete. Put more simply, the Hattons blame their troubles on bad legal advice and insist that the bankruptcy court's decision must be reversed because the evidence indicates that the errors stemmed from no selfish motive nor hope for personal gain.

Spencer counters the Hatton's picture by painting the scene with a different brush. While conceding that the total dollar value of the estate is small, he emphasizes that the magnitude of the errors, relative to the estate's diminutive size, is quite large. He suggests that without the errors, which understated assets and mischaracterized insider transactions, the application for bankruptcy may have been rejected out of hand. Finally, Spencer stresses that the bankruptcy court's action was appropriate for policy reasons; in order for the bankruptcy system to remain "pure and correct," sanctions must be imposed on parties who fail to take their oaths and burden of disclosure seriously.

■ Section 727 of the Bankruptcy Code provides, in pertinent part, that "[t]he court shall grant the debtor a discharge, unless ... the debtor knowingly and fraudulently, in or in connection with the case made a false oath or account." 11 U.S.C.

§ 727(a)(4)(A). The party objecting to the discharge has the burden of demonstrating, by a preponderance of the evidence, that a ground for denying the discharge exists. *Farouki v. Emirates Bank Int'l., Ltd.,* 14 F.3d 244, 249 (4th Cir.1994). "Once it reasonably appears that the oath is false, [however,] the burden falls upon the bankrupt to come forward with evidence that he has not committed the offense charged." *Johnson,* 139 B.R. at 166 (quoting *In re Tully,* 818 F.2d 106, 110 (1st Cir.1987)). Whether a debtor has made a false oath is a question of fact, and a bankruptcy court's factual findings may not be set aside unless clearly erroneous. *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251 (4th Cir.1987). This standard ensures that "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of witnesses." *Farouki,* 14 F.3d at 250. A bankruptcy court's legal rulings are reviewed *de novo. Hager v. Gibson,* 188 B.R. 194, 196 (E.D.Va.1995).

■ The discharge statute, by its very nature, invokes competing considerations. *Tully,* 818 F.2d at 110. One of the foremost purposes of the bankruptcy act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from" his former obligations. *In re Ingle,* 70 B.R. 979, 982 (Bankr.E.D.N.C. 1987) (quoting *Local Loan Co. v. Hunt,* 292 U.S. 234, 244, 54 S.Ct. 695, 699, 78 L.Ed. 1230 (1934)). On the other hand, the "solicitude of Congress ... stops at the debtor who does not measure up to that appealing image" of the "honest but unfortunate debtor." *Id.* (quoting Riesenfeld, *Creditors' Remedies and Debtors' Protection,* 729 (3d ed. 1979)). The purpose of a section 727(a)(4)(A) inquiry is to prohibit a discharge "for those who play fast and loose with their assets or with the reality of their affairs." *Farouki,* 14 F.3d at 249 (quoting *Tully,* 818 F.2d at 110). The statute thus maintains the integrity of the bankruptcy process by insuring that neither the trustee nor the creditors needs "to en-

section 727(a)(2) as well as section 727(a)(4) had been satisfied. Because a denial of discharge is appropriate if only one subsection of section 727 is satisfied, however, *Farouki v. Emirates Bank*

*Int'l., Ltd.,* 14 F.3d 244, 250 (4th Cir.1994), a finding by this court that the denial was proper under section 727(a)(4)(A) eliminates the need to investigate further.

gage in a laborious tug-of-war to drag the simple truth into the glare of daylight." *Tully*, 818 F.2d at 110. The requirement that "complete, truthful, and reliable information" be presented at the outset of the proceeding thus has two beneficial effects. Subsequent decisions can be based on fact rather than fiction, and creditors and trustees can husband their resources more effectively. *See Tully*, 818 F.2d at 110; *In re Farouki*, 133 B.R. 769, 782 (Bankr.E.D.Va.1991); *Ingle*, 70 B.R. at 983.

█ In order to deny a discharge pursuant to section 727(a)(4)(A), Spencer must show that the Hattons knowingly and fraudulently made false statements of a material nature under oath in connection with their bankruptcy case. *Williamson*, 828 F.2d at 250; *In re Colburn*, 145 B.R. 851, 853 (Bankr.E.D.Va.1992); *see also Ingle*, 70 B.R. at 983 (noting that a "material omission from a debtor's sworn statement of affairs or schedules [also] presents grounds for denying a discharge under 11 U.S.C. § 727(a)(4)(A)"). As noted above, the Hattons' schedules are rife with errors and omissions.[5] Moreover, the inaccuracies are clearly material. *See In re McFarland*, 197 B.R. 222, 224 (Bankr.E.D.Va.1995) (defining a "material" false oath as one which "bears a relationship to the debtor's ... estate, concerns the discovery of assets or business dealings, or the existence and disposition of property").

Although the Hattons now concede that they made several false statements under oath, they attempt to downplay their seriousness by characterizing them as mere innocent mistakes. Courts, however, have stressed that the providing of false information under oath in a bankruptcy proceeding is not a matter to be taken lightly. *See e.g., Tully*, 818 F.2d at 112 (stressing that sworn statements in bankruptcy schedules "must be regarded as serious business" because "the system will collapse if debtors are not forthcoming"); *In re Nazarian*, 18 B.R. 143, 146 (Bankr.D.Md.1982) (noting that a creditor need not actually rely on the false state-

ment). Moreover, the fact that the Hattons eventually corrected their schedules does not excuse the original misstatements. *Ingle*, 70 B.R. at 984; *but see Johnson*, 139 B.R. at 170 (providing that in certain circumstances, a subsequent amendment may negate the requisite showing of fraudulent intent "if the later disclosure is voluntary, and not in response to the fear of discovery").

As the finder of fact, the bankruptcy court had the opportunity to judge the credibility of the Hattons' protestations of innocent naivete, and it clearly rejected them in favor of a darker story of fraud and willful misconduct. As one court describes, the bankruptcy court, "upon trial of this matter, heard the evidence including the testimony of the witnesses. It observed the candor, demeanor, truthfulness, and [ ] testimony of witnesses as well as their credibility...." *In re St. Clair*, 193 B.R. 783, 785 (Bankr.W.D.Va. 1996). Thus the credibility of the Hattons' excuses is a question of fact, *see Tully*, 818 F.2d at 111, which the court below considered and found wanting. The Hattons have not offered evidence which is sufficient to warrant disturbing those findings.

While this court must accept the bankruptcy court's factual determinations, because they are not clearly erroneous, its legal conclusions must be reviewed *de novo*. By maintaining that they simply relied on bad legal advice and did not understand the schedules or intend to provide false information, the Hattons argue that they lacked the requisite fraudulent intent to warrant a denial of discharge. The primary issue thus becomes whether the bankruptcy court correctly applied the law in concluding that the evidence before it supported a finding of fraudulent intent.

█ As noted above, a section 727(a)(4)(A) denial of discharge necessitates a showing that the false oath was made "knowingly and fraudulently." 11 U.S.C. § 727(a)(4)(A). As courts have noted, the "problems inherent in ascertaining whether a debtor has acted with fraudulent intent are

---

**5.** See Part I, *supra*, for a listing of the various inaccuracies which the bankruptcy court deemed

to be the most serious.

obvious," because the debtor is the only person likely to testify and he is unlikely to admit that he acted with fraudulent intent. *Williamson,* 828 F.2d at 252; *Farouki,* 133 B.R. at 782. Consequently, the fraudulent intent requirement may be satisfied in one of two ways. First, fraudulent intent may be established by circumstantial evidence, or by inference drawn from a course of conduct. *Williamson,* 828 F.2d at 252 (citing *Farmers Coop. Assoc. v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982)). Thus a "pattern of concealment and nondisclosure" would permit an inference of the requisite intent. *Ingle,* 70 B.R. at 983. Secondly, courts have determined that a "reckless indifference to the truth" constitutes the "functional equivalent of fraud." *Johnson,* 139 B.R. at 166. Importantly, "[b]ecause a determination concerning fraudulent intent depends largely upon an assessment of the credibility and demeanor of the debtor, deference to the bankruptcy court's factual findings is particularly appropriate." *Williamson,* 828 F.2d at 252.

Given the legal standard, this court finds no reason to disturb the bankruptcy court's ruling. First, sufficient circumstantial evidence exists to support the conclusion that the Hattons' errors and omissions constituted a "pattern of concealment and nondisclosure" from which fraudulent intent can be legitimately inferred. While it is true that, under certain circumstances, claims of "honest confusion or a lack of understanding," *see Colburn,* 145 B.R. at 858, or reliance on poor legal advice, *see Ingle,* 70 B.R. at 984, may negate fraudulent intent, such arguments do not necessarily render illegitimate a contrary finding that such intent exists. A lack of understanding claim must be believable. *Colburn,* 145 B.R. at 858. Similarly, claims that erroneous answers on a bankruptcy schedule stemmed from bad legal advice suffices as a legitimate excuse only if the finder of fact believes that the reliance was in good faith, *Ingle,* 70 B.R. at 984, and if the debtor could not reasonably be expected to provide a sufficient answer without legal counsel. *See id.* (recognizing the advice of counsel defense only where a question would "require professional assistance in order to be answered truthfully"); *Nazarian,* 18 B.R. at 147 (noting that "advice of counsel does

not constitute a defense when it is self-evident that the property should be scheduled").

In this case, the evidence does not warrant a reversal of the bankruptcy court's finding that the Hattons' protestations of innocent naivete were not believable, and that their alleged reliance on poor legal advice was not in good faith. During the adversary proceeding, the bankruptcy court had the opportunity to examine the demeanor of the Hattons as they explained, for example, that the reason that they failed to list various insider transactions is that they did not understand what the term "insider" meant. The term "current expenditures" seems more easily understood, yet the Hattons, on their amended Schedule J of November 3, 1995, listed a $250 automobile installment payment for a car they were simply thinking of purchasing in the future. The bankruptcy court specifically considered these and other excuses and found that the Hattons lacked credibility.

Moreover, the evidence is even more supportive of the conclusion that the Hattons' extremely casual attitude towards the bankruptcy act's disclosure requirements indicates a "reckless disregard of both the serious nature of the information sought and the necessary attention to detail and accuracy in answering" which is the functional equivalent of fraud. *Johnson,* 139 B.R. at 166–67 (quoting *In re Diodati,* 9 B.R. 804, 807–08 (Bankr. D.Mass.1981)). The court in *Johnson* noted that any single error or omission "may have been the result of an innocent mistake." With multiple inaccuracies, however, "the cumulative effect of all the falsehoods together evidences a pattern of reckless and cavalier disregard for the truth serious enough to supply the necessary fraudulent intent required by § 727(a)(4)(A)." *Id.* at 170.

A case similar to the case at bar is that of *In re Sims,* 148 B.R. 553 (Bankr.E.D.Ark. 1992). In that case, as in this, the debtors' inaccuracies consisted of an under-reporting of income and a failure to list properly, or simply deleting altogether, certain property. *Id.* at 556. Utilizing a tactic similar to the one employed by the Hattons, the debtor in *Sims* sought to avoid a denial of discharge by explaining that "he merely 'glanced over' the

petition but 'didn't really understand it.'" *Id.* at 557. The court was unimpressed by the debtor's 'aw-shucks' attitude and excuses, noting that

> the Bankruptcy Code requires more than a "glance over" in reporting assets and transactions. Indeed, a mere "glance over" constitutes a cavalier and reckless disregard for truth which is inconsistent with the relief to be afforded the honest debtor.... The written declarations on the petition and schedules have the force and effect of oaths. A mere "glance over" merely corroborates the evidence that the debtors recklessly or wilfully made a false oath within the meaning of 727(a)(4).

*Id.* This court agrees with *Sims* and can find no fault in the bankruptcy court's conclusion that the Hattons' cavalier attitude towards the bankruptcy act's disclosure requirements constitutes a reckless indifference to the truth which is the functional equivalent of fraud.[6]

 Finally, Spencer's argument that the Hattons' errors and omissions cannot be overlooked simply because the dollar value of the estate is small is well-taken. In order to deserve the generous benefits of the Bankruptcy Code, in which "honest debtors [receive] a fresh start 'unhampered by the pressure and discouragement of preexisting debt,'" *Farouki*, 14 F.3d at 249 (quoting *Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 113–14, 27 L.Ed.2d 124 (1970)), a debtor, whether his estate is large or small, must accurately and diligently divulge the state of his financial affairs. The Bankruptcy Code's disclosure requirements do not contain a "no-harm, no-foul" exception for small estates. *See In re Weldon*, 184 B.R. 710, 715 (Bankr. D.S.C.1995) (rejecting the debtor's argument that a "no-harm, no foul exception [should apply] because the dollar amounts involved are not significant enough to justify denying discharge"). Accordingly, for the reasons stated above, the bankruptcy court's decision to deny the Hattons' discharge pursuant to 11 U.S.C. § 727(a)(4)(A) is AFFIRMED.

### B. Refusal to Allow the Hattons to Call Witnesses

The Hattons also argue that the bankruptcy court acted improperly by prohibiting them from calling witnesses or presenting evidence at the July 11, 1996 adversary proceeding. For the reasons which follow, this court finds that the bankruptcy court did not abuse its discretion in barring the Hattons from calling witnesses or introducing evidence at the adversary proceeding.

 As a general matter, a trial court has "wide latitude" in imposing sanctions on parties who fail to comply with pretrial orders and procedural rules. *Atlas Truck Leasing, Inc. v. First NH Banks, Inc.*, 808 F.2d 902, 903 (1st Cir.1987). Rule 16 of the Federal Rules of Civil Procedure sets forth the basic guidelines by which the court may use its discretion to hold pretrial conferences and craft pretrial orders which lay out a procedural road map for the trial. *See* Fed. R.Civ.P. 16.[7] More specifically, Rule 16(f) provides, in pertinent part, that

> [i]f a party or party's attorney fails to obey a scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D).

Fed.R.Civ.P. 16(f). In addition to allowing harsher sanctions, such as entering default judgment against the offending party, *see* Fed.R.Civ.P. 37(b)(2)(C), Rule 37(b), **Failure to Comply with Order,** also provides that the court may sanction a non-complying party by "refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from in-

---

6. To cite one example of the debtors' conception of due diligence: Even if the Hattons' testimony that they did not know what "insider" meant is to be believed, their solution to the problem (making no effort to clarify the uncertainty, and then swearing an oath that the forms have been completed accurately), is wholly inadequate.

7. Rule 16 of the Federal Rules of Civil Procedure is adopted and made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7016.

troducing designated matters in evidence." Fed.R.Civ.P. 37(b)(2)(B).

Courts have provided various rationales to support the court's power to sanction a party pursuant to Rules 16 and 37, noting that the threat of sanctions serves both to punish those who violate pretrial orders or abuse the discovery process, as well as to deter future misconduct. *See Hathcock v. Navistar Int'l. Transp. Corp.,* 53 F.3d 36, 40 (4th Cir.1995); *Mutual Fed. Sav. & Loan v. Richards & Associates, Inc.,* 872 F.2d 88, 92, 94 (4th Cir.1989). This support centers on a recognition of the value of the pretrial order in "provid[ing] some necessary order and clarity to the pretrial process." *Rabb v. Amatex Corp.,* 769 F.2d 996, 999 (4th Cir.1985); *see also In re Maurice,* 21 F.3d 767, 773 (7th Cir.1994) (discussing the benefits of requiring compliance with pretrial orders and the need to sanction non-compliance).

■ An appellate court reviews a trial court's decision to impose sanctions for an abuse of discretion. *Rabb,* 769 F.2d at 999; *cf. Atlas Truck,* 808 F.2d at 903 (stating that the trial court should be reversed "only if the ruling results in clear injustice"); *Ardrey v. United Parcel Service,* 798 F.2d 679, 682 (4th Cir.1986), *cert. denied,* 480 U.S. 934, 107 S.Ct. 1575, 94 L.Ed.2d 766 (1987) (noting that the trial court will not be overturned "absent a showing of clear abuse of discretion"). Of course, "[w]hile the imposition of sanctions under Rule 37(b) lies within the trial court's discretion, 'it is not ... a discretion without bounds or limits.'" *Hathcock,* 53 F.3d at 40 (quoting *Wilson v. Volkswagen of Am.,* 561 F.2d 494, 503 (4th Cir.1977), *cert. denied,* 434 U.S. 1020, 98 S.Ct. 744, 54 L.Ed.2d 768 (1978)). The Fourth Circuit has made clear, primarily in cases in which the trial court has imposed the harshest sanction of default judgment, that the trial court actually has a "range of discretion." While the range is "more narrow" when default judgment is entered, a court has a greater degree or range of discretion to impose less onerous sanctions. *Id.; Mutual Federal,* 872 F.2d at 92.

■ A review of past decisions indicates that the determination of whether a trial court has abused its discretion is rather case-specific. *See, e.g., Hathcock,* 53 F.3d at 37

(overturning the district court's entry of a six million dollar default judgment as sanction for alleged violation of scheduling order); *Mutual Federal,* 872 F.2d at 94 (holding that the district court did not abuse its discretion in granting default judgment as sanction for corporation's discovery abuses); *Lolatchy v. Arthur Murray, Inc.,* 816 F.2d 951 (4th Cir. 1987) (overturning the entry of default judgment as sanction for delay after noting that trial court had failed to consider less onerous sanctions); *Rabb,* 769 F.2d at 997 (upholding a decision to preclude plaintiff's critical evidence as sanction for failure to comply with deadlines of pretrial order).

■ In this case, the trial court's range of discretion is more broad, because the sanction imposed was much lighter than default judgment. The facts underlying the bankruptcy court's decision to impose the penalty are as follows. In preparation for the July 11, 1996 adversary proceeding, the court set a pretrial conference for April 23, 1996. Neither the Hattons nor their counsel attended the conference. Mr. Deady, the debtors' attorney, admitted at trial, however, that on the afternoon of the twenty-third he received a call from Spencer's counsel alerting him that he had missed the conference. Thus, it is not unreasonable to assume that the Hattons' attorney should have been aware that a routine pretrial order would be forthcoming from the routine pretrial conference. In fact a pretrial order was issued on April 24, 1996, and required counsel, *inter alia,* to file a list of proposed exhibits and anticipated witnesses ten days prior to trial. By all accounts, the Hattons' counsel never bothered to file anything at any time before arriving, late, to the adversary proceeding. As a result, the bankruptcy court prohibited the Hattons from putting on any witnesses at the adversary proceeding.

The prejudicial effect of this sanction is questionable. The debtors' counsel was permitted to cross-examine extensively both of the Hattons as well as Spencer; he was also allowed to take Spencer as his own witness and thus to question him about matters that exceeded the scope of the earlier direct examination. The apparently limited extent of

the prejudice suffered by the Hattons is further revealed by a comment made by their own attorney. Following the close of Spencer's case, and before being informed by the bankruptcy court that he would not be permitted to call any witnesses, the Hattons' counsel told the court that "the only [other] evidence we expect is the Hattons' testimony concerning the alleged malicious damage to the household." Transcript of Proceedings at 178, *Spencer v. Hatton*, No. 95–24052, Adversary No. 96–2052 (Bankr.E.D.Va. Oct. 29, 1996).

The court in *In re Maurice* faced facts very similar to those of the case at bar. *Maurice* involved another instance in which a bankruptcy court in a nondischargeability hearing ruled that the debt was not dischargeable after sanctioning the debtor for failure to comply with a pretrial order. In that case, as in this, the court barred the debtor from calling witnesses that should have been, but were not, identified under the terms of the pretrial order. *Maurice*, 21 F.3d at 770. The appellate court in *Maurice* was unimpressed by the debtors' complaints that they lacked sufficient notice of the pretrial order's terms, noting dismissively that "failure to attend this [pretrial] hearing is not a sufficient justification for not complying" with the pretrial order. *Id.* at 772. The court specifically rejected the notion that the bankruptcy court's sanction, which "prohibited [debtor] from interposing relevancy objections to exhibits offered by [creditor], calling [creditor] as an adverse witness, and from using [creditor] to authenticate exhibits," was too severe. *Id.* at 772–73.

This court agrees with the reasoning in *Maurice* that the pretrial order is a valuable tool for "identifying witnesses and resolving evidentiary disputes in advance of trial, thus narrowing the issues and expediting the trial." *Id.* at 773. Moreover, this court finds itself in accord with the *Maurice* court's view that

> [w]hen one party fails to comply with a court's pre-hearing order without justifiable excuse, thus frustrating the purposes of the pre-hearing order, the court is certainly within its authority to prohibit that party from introducing witnesses or evidence as a sanction.

*Id.* Based on *Maurice* and a review of the applicable law, this court FINDS that the bankruptcy court's decision to prohibit the Hattons from calling witnesses at the July 11, 1996 adversary proceeding was not an abuse of discretion.

## C. Decision to Allow Spencer to Present New Evidence

█ Finally, the Hattons complain that the bankruptcy court erred in granting Spencer's Motion for New Trial and agreeing to hear new evidence. For the reasons stated below, this court finds that the bankruptcy court did not abuse its discretion in deciding to hear new evidence.

The somewhat peculiar facts underlying the bankruptcy court's decision to hear additional evidence are as follows. On July 17, 1996, after the conclusion of the adversary proceeding, but before the court released its opinion, Spencer filed a Motion for New Trial for the purposes of bringing new evidence concerning additional unreported property to the court's attention. The Hattons filed a response on July 26, 1996, and a hearing was set for August 27, 1996. On August 5, 1996, however, the bankruptcy court issued its opinion and order. Spencer's attorney then called the court on August 16, 1996. While Spencer may have decided that the motion was no longer necessary given the August 5 ruling in his favor, the bankruptcy court was apparently less willing to let the matter drop. On September 10, 1996, the court decided, *sua sponte*, to reopen the case and hear the new evidence. A hearing was set for October 1, 1996.

Spencer's new evidence consisted of testimony that the Hattons were the record owners of an interest in land in Accomac County, Virginia.[8] The Hattons countered by submitting a recorded deed dated July 29, 1996, indicating that they had conveyed away whatever interest they had previously held. The Hattons object to the court's decision to hear this new evidence, insisting that, because real property ownership is a matter of

8. The Hattons' schedules indicated that they owned no such property.

public record, Spencer should have been able to produce this evidence at the July 11, 1996 hearing.

This court concludes that the bankruptcy court did not abuse its discretion in deciding to reopen the case and hear the new evidence. *See City of Richmond v. Atlantic Co.*, 273 F.2d 902, 916–17 (4th Cir.1960) (describing as "well settled" the rule that "the granting or refusing of a new trial is a matter resting in the sound discretion of the trial judge, and ... his action thereon is not reviewable upon appeal, save in the most exceptional circumstances"). As Spencer correctly notes, the discovery that the Hattons apparently owned an interest in land was certainly relevant in light of the fact that the debtors' schedules and testimony at the July 11, 1996 hearing expressly disavowed ownership of any realty. Moreover, even if the bankruptcy court did commit error, that error is harmless. Put simply, the additional evidence seems to have made no difference whatsoever. Spencer had already prevailed, and apparently the bankruptcy court never issued a revised opinion and order to incorporate the new evidence. For these reasons, the bankruptcy court's decision to hear the new evidence is AFFIRMED.

## III. CONCLUSION

For the reasons stated above, the bankruptcy court's opinion and order denying the Hattons a discharge of debt pursuant to 11 U.S.C. § 727(a)(4)(A) is AFFIRMED. This court also AFFIRMS the bankruptcy court's decision to prevent the Hattons from putting on witnesses at the adversary proceeding as a sanction for their non-compliance with the court's pretrial order. Finally, the court's decision to reopen the case and hear new evidence is also AFFIRMED.

It is so ORDERED.