**In re Carl L. EPPERS and Sandra R. Eppers, Debtors.**

**United States Trustee, Plaintiff,**

v.

**Sandra R. Eppers, Defendant.**

**Bankruptcy No. 7–02–12961 MR. Adversary No. 03–1313 M.**

United States Bankruptcy Court, D. New Mexico.

July 13, 2004.

---

11. *See Kieffer,* 279 B.R. at 294–95.

Ronald Andazola, Assistant U.S. Trustee, Albuquerque, NM, Linda S. Bloom, Albuquerque, NM, for U.S. Trustee.

R. Trey Arvizu, III, R. Matthew Bristol, Roswell, NM, for Debtors.

Stephen Doerr, Clovis, NM, Allan L. Wainwright, Albuquerque, NM, for Creditor.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

MARK B. MCFEELEY, Bankruptcy Judge.

THIS MATTER is before the Court on the trial of the merits of this adversary proceeding to revoke Defendant Sandra R. Eppers' discharge. The trial was held in Roswell on June 22, 2004, and the Court took the matter under advisement. The United States Trustee ("UST") was represented by Ron E. Andazola, and Defendant Sandra R. Eppers ("Defendant") was represented by R. Trey Arvizu. The UST filed this adversary proceeding against both Sandra Eppers and Carl Eppers seeking a revocation of the Debtors' dis-

charge pursuant to 11 U.S.C. § 727(d)(1) [1] and § 727(e)(1), but Defendant Carl Eppers was dismissed from this adversary proceeding with prejudice on April 23, 2004. *See* Stipulated Order Dismissing Defendant Carl L. Eppers (Docket # 16).

At issue is whether the inaccurate description and value of Defendant's interest in certain real property listed in her statements and schedules are sufficient grounds upon which to revoke her discharge. After considering the evidence presented at trial, reviewing the relevant statutes and case law, and being otherwise sufficiently informed, the Court concludes that the Defendant's discharge must be revoked. In reaching this conclusion, the Court enters the following findings of fact and conclusions of law:

## FINDINGS OF FACT

1. Carl and Sandra Eppers (together "Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on April 26, 2002.

2. Sandra Eppers was previously married to Donald DeGray.

3. Sandra Eppers and Donald DeGray entered into a Marital Settlement Agreement in January of 1998 in connection with marriage dissolution proceedings. (Exhibit UST–1). The Marital Settlement Agreement provides that Sandra Eppers will take the real property at 2005 Urton Road, in Roswell, New Mexico ("Urton Road Property") as her sole and separate property. *See* Marital Settlement Agreement, Article V, ¶ 3.a (Exhibit UST–1).

4. The Marital Settlement Agreement provides further:

Petitioner [Donald DeGray] shall pay any currently outstanding mortgage debt (including the principal, interest, real estate taxes, and insurance) on the property located at 2005 Urton Road, Roswell, New Mexico, while Respondent [Sandra Eppers] resides in said residence. In the event Respndent chooses to move from said residence, Petitioner shall sell the residence at a commercially reasonable price and Respondent shall receive from Petitioner the amount of money equal to the total purchase price of said residence. Respondent may reside in said residence for as long as she desires and in the event the mortgage is paid in full while Respondent is residing in said residence, Petitioner shall deliver to Respondent a General Warranty Deed to said house free from any liens created by Petitioner.

Marital Settlement Agreement, Article VI, ¶ k.

5. The deed to the Urton Road Property is titled in the name of Precision Electric, Inc. Exhibit D–2.

6. At the time Debtors filed their voluntary petition, Sandra Eppers was not living in the 2005 Urton Road Property. (Testimony of S. Eppers).

7. Donald DeGray, as principal of Precision Electronics, Inc. collected rent from the Urton Road Property.

8. In August of 2001, prior to the filing of the bankruptcy, Sandra Eppers approached her ex-spouse about selling the 2005 Urton Road Property. Ms. Eppers testified that she and her ex-spouse had reached an agreement regarding the potential sale of the Urton Road Property whereby she would refinance the home, pay off the outstanding mortgage, and retain the equity in the home the anticipated amount of approximately $15,000.00 to

---

**1.** Future statutory references herein are to title 11 of the United States Code, unless otherwise noted.

$20,000.00, but that she was unable to obtain financing and consequently was forced to file for protection under the Bankruptcy Code.

9. Debtors' Schedule A—Real Property lists no interests in real property.

10. Debtors' Schedule B—Personal Property reflects the following interest:

Spouse has a life estate in ex-spouse's house located at 2005 Urton Road, Roswell. Ex-spouse makes the mortgage payments on the house.

11. The value of the "life estate" is listed as $1.00. Schedule B.

12. Debtors claimed an exemption in the interest in the Urton Road Property, valued at $1.00. *See* Schedule C—Property Claimed as Exempt.

13. Defendant provided her bankruptcy counsel with a copy of the Marital Settlement Agreement.

14. Defendant relied on the advice of her counsel in preparing her statements and schedules.

15. After the filing of the bankruptcy petition, Defendant's counsel sent a letter to Defendant dated May 21, 2002 stating that he had "reviewed the Divorce Decree and bankruptcy petition," that "it is best if we wait until after the [§ 341] hearing on June 19th and then request pursuant to the Decree that Mr. DeGray sell the house on Urton Road" and that while he did not know whether Ms. Eppers would be entitled to a share of the rent from the Urton Road Property, "the proceeds from the sale should be yours." Exhibit UST–2.

16. The Chapter 7 Trustee asked no questions about the "life estate" listed on Debtors' schedules.

17. Debtors never amended their statements or schedules.

18. A discharge was entered on August 26, 2002. (Docket # 15; Case No. 7–02–12961 MR).

19. In November 2002, Defendant filed a contempt action against her former husband in the Fifth Judicial District Court, County of Chaves, State of New Mexico, in case number DM 98–44 to enforce the terms of the Marital Settlement Agreement and force the sale of the Urton Road Property. Exhibit UST–3.

20. The UST did not become aware of the bankruptcy estate's interest in the Urton Road Property until after the discharge was entered.

21. Upon the request of the UST, and after notice and a hearing, the Debtors' bankruptcy proceeding was reopened for the purpose of administering the Urton Road Property. *See* Motion by United States Trustee to Reopen Case for Administration of Asset and for Deferment of the Filing Fee (Docket # 17; Case No. 7–02–12961 MA); and Order on Motion to Reopen (Docket # 26; Case No. 7–02–12961 MA).

22. The Chapter 7 Trustee sold the Urton Road Property to Mr. DeGray for $10,000.00. *See* Order Authorizing Trustee's Sale of Property of the Estate, entered June 25, 2003 (Docket # 36; Case No. 7–02–12961 MA)

## DISCUSSION

■ The UST seeks to revoke Defendant's discharge in accordance with § 727(d)(1) and (e)(1), which provide:

(d) On request of the trustee, a creditor, or the United States trustee, and after notice and a hearing, the court shall revoke a discharge granted under subsection (a) of this section if—

(1) such discharge was obtained through the fraud of the debtor, and the requesting party did not know of

such fraud until after the granting of such discharge;

....

(e) The trustee, a creditor, or the United States trustee may request a revocation of a discharge—

(1) under (d)(1) of this section within one year after such discharge is granted.

11 U.S.C. § 727(d)(1) and (e)(1).

To prevail on a cause of action seeking to revoke a debtor's discharge, the UST bears the burden of proving by a preponderance of evidence that (1) the Defendant Sandra Eppers obtained her discharge through fraud; and (2) that the UST did not discover the fraud until after the discharge had been granted. *In re Jones*, 178 B.R. 1, 3 (Bankr.D.N.M.1995) (citing *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991) for standard of proof). Defendant stipulates that the UST did not discover that the Urton Road Property was inaccurately listed in the Debtors' statements and schedules until after the discharge was entered. Thus the second requirement has been satisfied. In addition, the UST timely filed this adversary proceeding on August 26, 2003, exactly one year after the Debtors were granted their discharge in accordance with the requirements of § 727(e)(1). What remains at issue, therefore, is whether Defendant's discharge was obtained through fraud.

█ Revocation of a discharge under § 727(d)(1) is appropriate only where the alleged fraud would have resulted in the denial of the debtor's discharge had the Court been made aware of such conduct prior to the entry of the discharge. *In re Edmonds*, 924 F.2d 176, 180 (10th Cir. 1991) ("To revoke a discharge under § 727(d), the debtor must have committed a fraud in fact which would have barred the discharge had the fraud been known.") (citation omitted). This standard necessarily implicates the grounds for denial of a debtor's discharge enumerated in § 727(a). The UST asserts that the Defendant knowingly and fraudulently concealed assets of the estate and made false oaths and accounts in connection with her case, actions that would bar her discharge under § 727(a)(2) and (a)(4)(A).[2] Specifically, the UST asserts that the Defendant's inaccurate listing of her interest in the Urton Road Property and valuation of such interest at $1.00 on her statements and schedules constitutes a false oath and concealment of an asset sufficient to revoke Defendant's discharge.

█ Both § 727(a)(2) and § 727(a)(4) require fraud in fact, an act done with actual intent to deceive. *See* 6 Collier on Bankruptcy ¶ 727.04[1][a] (Henry J. Sommer and Alan L. Resnick, eds., 15th ed. rev.2003) (noting that "The analysis ... of what constitutes intent to defraud with respect to section 727(a)(2) [requiring actual intent] is largely applicable to section 727(a)(4).)"; *In re Spears*, 291 B.R. 825, 828 (Bankr.C.D.Ill.2003) (noting that § 727(d)(1) requires a "knowing intent to defraud" and listing elements for § 727(a)(2)(A) as requiring that the "debtor, with intent to hinder, delay or defraud

---

2. Those sections provide, in relevant part:

    (a) The court shall grant the debtor a discharge, unless—

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has ... concealed ...

    (A) property of the debtor within one year before the date of the petition; or

    (B) property of the estate, after the date of the filing of the petition.

    (4) the debtor knowingly and fraudulently, in or in connection with the case—

    (A) made a false oath or account.

11 U.S.C. § 727(a)(2) and (a)(4)(A).

a creditor or trustee concealed property of the debtor" and § 727(a)(4) as requiring a knowing and fraudulent false oath). False entries contained in a debtor's statements and schedules can form the basis for denial of a debtor's discharge under § 727(a)(4). *In re Morris*, 302 B.R. 728, 739 (Bankr. N.D.Okla.2003) ("A statement contained in a debtor's schedules or statement of affairs ... may constitute a false oath for purposes of § 727(a)(4).") (citing *Job v. Calder*, 907 F.2d 953, 955 (10th Cir.1990)). However, a determination that a statement is false is insufficient; to bar discharge, the debtor must know of its falsity and intentionally misstate facts in the statements and schedules. *See In re Brenes*, 261 B.R. 322, 334 (Bankr.D.Conn.2001) ("A statement is not deemed to be made with fraudulent intent simply because it is false ...") (citing *In re Arcuri*, 116 B.R. 873, 882 (Bankr.S.D.N.Y.1990)). Moreover, the false statement must be material. *Gullickson v. Brown (In re Brown)*, 108 F.3d 1290, 1294 (10th Cir.1997) ("[plaintiff] must demonstrate by a preponderance of the evidence that the debtor knowingly and fraudulently made an oath and that the oath relates to a material fact.") (citation omitted). A statement is material where it relates to assets of a debtor's estate. *See Chalik v. Moorefield (In re Chalik)*, 748 F.2d 616, 618 (11th Cir.1984) ("The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property.") (citation omitted). Finally, because a defendant is unlikely to testify that he or she acted fraudulently, intent to defraud can be inferred based on circumstantial evidence. *See Morrel, West & Saffa, Inc. v. Riley (In re Riley)*, 128 B.R. 567, 569–70 (Bankr.N.D.Okla.1991) (citing *Williamson v. Fireman's Fund Ins.Co.*, 828 F.2d 249, 252 (4th Cir.1987)).

■ Defendant claims that the inaccuracies in her statements and schedules were not made with the requisite intent to deceive, that she relied on the advice of counsel in completing her statements and schedules and in evaluating her interest in the Urton Road Property, and that because her former spouse claimed ownership of and was collecting rents from the Urton Road Property, which remained titled in Precision Electric, Inc., she did not fully understand the nature of her interest in the Urton Road Property. The surrounding facts and circumstances belie Defendant's claim that the misstatements as to the nature and value of her interest in the Urton Road Property were unintentionally false.

■ Debtors have the duty to fully and accurately disclose all property interests on their statements and schedules. *See Riley*, 128 B.R. at 570 (" 'A debtor has an uncompromising duty to disclose whatever ownership interest he holds in property.' ") (quoting *In re Lunday*, 100 B.R. 502 (Bankr.D.N.D.1989)). As emphasized by the bankruptcy court in *Riley*,

> The Debtor is not to decide for himself the nature of his interest in property, the value of that property or the amount of his equity therein. Also, he is not to decide for himself which questions on the Statement of Affairs should be answered fully, completely and truthfully. The Debtor cannot omit information required of him simply because he believes or decides the property omitted has no value or the information is not necessary. This is for the creditors and the Court to decide.

*Id.* at 569.

Reliance on counsel in completing statements and schedules is no defense to mate-

rial misstatements contained therein, unless such reliance was reasonable. *See Hatton v. Spencer (In re Hatton)*, 204 B.R. 477, 484 (E.D.Va.1997) ("[C]laims that erroneous answers on a bankruptcy schedule stemmed from bad legal advice suffices as a legitimate excuse only if the finder of fact believes that the reliance was in good faith ... and if the debtor could not reasonably be expected to provide a sufficient answer without legal counsel.") (citation omitted). Here, Defendant provided her counsel with a copy of the Marital Settlement Agreement, which clearly states that she is entitled to receive "the amount of money equal to the total purchase price" of the Urton Road Property, and that if she is living in the property when the mortgage is paid, she is entitled to receive a deed "free and clear of liens." Even more unequivocal is the language in the Marital Settlement Agreement providing that Defendant will take the Urton Road Property "as her sole and separate property." Describing this interest as a "life estate" is clearly contrary to the plain language of the Marital Settlement Agreement, and Defendant's reliance on counsel for this patently inaccurate description is an insufficient excuse. Based on the testimony at trial, it is unclear whether Defendant's former bankruptcy counsel had a copy of the Marital Settlement Agreement prior to the date the petition was filed, but based on the clear language of the Marital Settlement Agreement, once he did view the Marital Settlement Agreement he had a duty to advise the Debtors to amend the statements and schedules to accurately reflect their interest in the Urton Road Property. Defendant may not have understood the legal definition of "life estate," but it is not reasonable to conclude that

she did not believe she had a significant interest in the Urton Road Property, and that such interest was an interest in real property.

Defendant failed to list the Urton Road Property in Schedule A—Real Property. Instead, the Urton Road Property is listed with other personal property interests in Schedule B. Debtors have a duty to carefully and accurately complete their statements and schedules, especially since they sign them under penalty of perjury. *Riley*, 128 B.R. at 569 (noting that "[t]he debtor signs his bankruptcy petition, schedules and statement of affairs under penalty of perjury."). Failing to list the Urton Road Property under Schedule A, and describing such interest as a "life estate" is, at the very least, misleading. Such a description failed to put the case trustee on sufficient notice of Defendant's true interest in the Urton Road Property.[3] The Court finds that Defendant's failure to include the Urton Road Property in Schedule A and the description of her interest in the Urton Road Property as a "life estate" constitutes a material misstatement. However, even if the inaccurate description of the Urton Road Property as a "life estate" can be excused, the misstated value cannot.

Defendant's testimony revealed that she approached her ex-spouse prior to the filing of the bankruptcy to see if the Urton Road Property could be sold. She anticipated that she would receive the equity in the property in the estimated amount of $20,000.00. Listing the value of the Urton Road Property at $1.00 is misleading and inexcusable given Defendant's anticipated estimated recovery. *See Morton v. Dreyer (In re Dreyer)*, 127 B.R. 587, 593 (Bankr.

---

3. *See* Findings of Fact and Conclusions of Law on Motion to Reopen (Docket # 25; Case No. 7–02–12961 MR) (finding that the debtor's description of Ms. Eppers' interest in the Urton Road Property was insufficient to cause the chapter 7 trustee to investigate further into the true nature and value of the property).

N.D.Tex.1991) (finding that debtor's listing of the value of corporate stock as "undetermined" in his statements and schedules when he knew the corporation had substantial value constituted a false oath under § 727(a)(4) made with intent to mislead the trustee). Defendant knew prior to the date of the filing of the bankruptcy that she had valuable rights to the Urton Road Property and nevertheless signed her statements and schedules under penalty of perjury valuing such property at $1.00. Most egregious is the letter from Defendant's prior bankruptcy counsel advising Defendant that she should wait until after the creditor's meeting to pursue her claims against the Urton Road Property and confirming her right to force the sale of the Urton Road Property. In fact, that is precisely what she did. After Defendant received her discharge, she initiated proceedings in her marriage dissolution proceedings to enforce her rights in the Urton Road Property and force its sale. If the value of Defendant's interest in the Urton Road Property truly were only a dollar, Defendant would not expend money on legal fees to pursue her interest in it. Given Defendant's knowledge of the significant value of her interest in the Urton Road Property before she filed for bankruptcy, coupled with her post-petition action to enforce her rights in the Urton Road Property, the Court finds that Defendant's valuation of the Urton Road Property at $1.00 in her statements and schedules constitutes a material misstatement made with the requisite fraudulent intent sufficient to bar discharge under § 727(a)(4).

■■■■■ The Court is deeply disturbed by the actions of Defendant's former counsel in this case. Aiding a debtor in presenting information which is clearly incorrect to a court is a violation of counsel's duty to both the court and his client. Clearly by May 21, 2002, the date of counsel's letter, he was aware that the Defendant had more than a life estate in the Urton Road Property and, if that was his first knowledge of such interest, he was required to advise his client to amend her schedules to properly reflect her rights in the property. To the contrary, he advised his client to wait until after the creditor's meeting before pursuing her rights in the Urton Road Property. Such behavior appears to be a breach of counsel's ethical duties, and the Court will make an appropriate referral of this matter for further investigation.

Based on the foregoing, the Court concludes that Defendant's incomplete and inaccurate disclosure of the nature and value of Defendant's interest in the Urton Road Property rises to the level of material fraud sufficient to bar discharge had such information been brought to the Court's attention prior to discharge. *See Spears,* 291 B.R. at 828 (noting that the requisite fraudulent intent contemplated by § 727(d)(1) can be inferred based on the surrounding facts and circumstances) (citing *In re Yonikus,* 974 F.2d 901, 905 (7th Cir.1992)). Consequently, Defendant's discharge should be revoked in accordance with § 727(d)(1).

These findings of fact and conclusions of law are entered in accordance with Rule 7052, Fed.R.Bankr.P. An appropriate judgment will be entered.