In re Perry D. HATTON, Candace A. Hatton, Debtors.

Michael H. SPENCER, Plaintiff,

v.

Perry D. HATTON, Candace A. Hatton, Defendants.

Bankruptcy No. 95–24036.
Adversary No. 96–2052.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Aug. 5, 1996.

**472**

Harry W. Jernigan, III, Virginia Beach, VA.

Stephen G. Merrill, Norfolk, VA, for debtors.

Alexander P. Smith, Trustee.

Debera F. Conlon, Assistant U.S. Trustee.

## MEMORANDUM OPINION & ORDER

DAVID H. ADAMS, Bankruptcy Judge.

This adversary proceeding comes before the Court on the complaint of Michael H. Spencer ("Spencer") to determine the dischargeability of the defendants debt to him under 11 U.S.C. § 523 and on Spencer's objection to the discharge of the Hattons under 11 U.S.C. § 727.[1] The defendants' filed an answer on April 3, 1996, and the Court conducted an Initial Pretrial Conference, which was not attended by the defendants or their counsel, on April 23, 1996. The Court's customary Initial Pretrial Order was entered on April 24, 1996 and was issued counsel for the plaintiff and the defendants. That Order required, *inter alia*, ten days prior to trial the filing of a list of witnesses and a list of all exhibits each party intended to offer into evidence at the trial. The defendants filed nothing and were therefore prohibited from offering any evidence at the trial, except through the cross examination of the plaintiff's witnesses.[2] At the conclusion of the

plaintiff's evidence, the defendants' counsel moved for summary judgment (sic), which after argument the Court took under advisement. Also, the plaintiff requested that attorney's fees be awarded which the Court ruled would be considered at a subsequent hearing if it was determined that such an award was proper under the pleadings and the facts of the case.

## FINDINGS OF FACT

The plaintiff leased a house in Virginia Beach to the defendants, pursuant to a written six year lease dated February 18, 1984, which was extended by agreement to December 31, 1993. Plaintiff's Exh. 1. The lease required the tenants, among other things, to maintain the house and lot in a sanitary condition, to maintain all of the systems of the house in good working order, not to damage or disfigure the premises in any way, and to maintain the yard in good order and appearance.

In 1991, it came to the attention of the plaintiff that the defendants were not maintaining the house and yard to the standards set forth in the lease, and the plaintiff wrote to the defendants to remind them of such responsibilities under the lease. Plaintiff's Exh. 2. Again in June, 1993, the defendants received a letter from the plaintiff pointing out their failure to properly care for the air conditioning system and the yard at the leased premises. Plaintiff's Exh. 3. In June 1993, when the plaintiff entered the leased premises incident to his doing some painting of the exterior of the house, he found and photographed the evidence of the tenants' failure to keep up the house and the yard as required by the lease, and the photographs display the squalid conditions in which they chose to live. Plaintiff's Exh. 4A–4N.

By letter dated November 27, 1993, the defendants served notice on the plaintiff that they would terminate the lease and vacate the premises on December 31, 1993. Plain-

---

1. The complaint was pled generally and not with specificity as required under the Local Rules. Based on the allegations as well as the evidence and argument presented, it is clear that the plaintiff is proceeding under § 523(a)(6) and § 727(a)(2), (3), (4) and (5). The defendants raised no objection to the lack of specificity in the complaint.

2. The plaintiff did call Perry Hatton and Candace Hatton as witnesses.

tiff's Exh. 5. That event triggered certain additional responsibilities of the defendants to leave the premises in approximately the same condition as when they entered into the lease, subject to reasonable wear and tear, and to have the premises in compliance with all of the then applicable local ordinances. Exhibit 1, ¶ 12 and ¶ 20.

On January 1, 1994, the plaintiff reentered the premises and found a similar mess inside and outside the house, evidencing an unreasonable amount of wear and tear throughout. Plaintiff's Exh. 6–9. As a result, the plaintiff sued the defendants in General District Court, which action was removed by the defendants to the Circuit Court of Virginia Beach, where a jury decided in favor of the plaintiff and awarded him compensatory damages for the breach of the lease contract, as well as an award of attorney's fees in excess of those prayed for in the motion for judgment. The jury award rendered on July 20, 1995, consisted of damages of $2,390.28 and attorney's fees of $2,500.00. Fearing that the plaintiff would begin immediate garnishment proceedings to collect the judgment, which was not entered by the Circuit Court until September 7, 1995, and on advice of counsel the defendants filed a joint Chapter 7 petition on August 4, 1995. Plaintiff's Exhibits 15 and 17.

In addition to the state court judgement, the plaintiff focuses his concerns on the bankruptcy petition, schedules and statement of affairs (collectively the "petition") filed by the defendants. Relating only to the most prominent of the deficiencies in the petition, the filing by the defendants was sloppy, inconsistent, inaccurate and misleading: (1) the Statement of Affairs in paragraph 3.a. indicates that no payments in excess of $600 were made within 90 days of the filing of the petition, when in fact a payment was made on behalf of the defendants, by Mrs. Hatton's sister, in the amount of $1,427.79 to Thousand Trails relative to a 1/500th interest in real estate in Accomac County, Virginia, that the defendants had contracted to purchase in June, 1987, Plaintiff's Exh. 21–24; (2) the defendants answered question 3.b. of the Statement of Affairs in the negative, stating that they had made no payments to insiders in the 12 months immediately prior to the filing of the petition, when in fact they had paid Mrs. Hatton's mother $1,200 by allotment ($100 per month) in the year prior to the filing; (3) on Schedule B, Item 19, the defendants stated that they had no interest in a life insurance policy, when in fact it was later determined that Mr. Hatton had cash surrender value in an Academy of Life policy, net of outstanding loans, in the amount of $923.27; (4) on Schedule B, Item 4, the defendants lumped together 44 entries under the category of "Household goods and furnishings" and stated an aggregate value for all of the entries of $2,283.00; (5) on the Statement of Affairs the defendants listed the current gross income of Mrs. Hatton, from January 1 through August 3, 1995 (the date the petition was signed), as $8,132.20, when in fact her gross income from Landmark Communications was $11,959.13 through July 15, 1995, and she received another paycheck covering the pay period ending on July 29, 1995; (6) on the Statement of Affairs the defendants listed the current gross income of Mr. Hatton, from January 1 through August 3, 1995, as $11,432.76, when if fact his gross income from the United States Navy for that period was $13,366.86; (7) nowhere in the petition is it reflected that as of August 3, 1995, the defendants had pending against Spencer in the Circuit Court of Virginia Beach a claim for damages in the amount of $50,000; and (8) the defendants stated on Schedule F, the listing of unsecured debts, that all of their unsecured debt, except that to the Academy Life Insurance Company and a loan from Mrs. Hatton's mother in the amount of $1,800, was incurred in June and July, 1995. In addition, the petition contains numerous mathematical inconsistencies and errors, some of which were purportedly corrected in the amendment to the petition filed on August 29, 1995. Plaintiff's Exh. 18.

The defendants each admitted thoroughly reviewing the petition in its entirety at their attorney's office, with a twenty year old, part-time paralegal, prior to executing all of the declarations contained in the petition and required for the institution of bankruptcy proceedings in this Court. No indication was given that the defendants ever reviewed the

petition directly with either counsel in their attorneys' office, although both of those attorneys had a hand in the representation of the defendants in these proceedings.

## CONCLUSIONS OF LAW

The Court has jurisdiction of the subject matter of this action pursuant to 28 U.S.C. § 1334, and this is a core proceeding pursuant to 11 U.S.C. § 157(b)(2)(I) and (J).

The complaint filed by Spencer does not specify the Code subsection under which relief is sought; therefore the Court assumes the plaintiff is proceeding under 11 U.S.C. §§ 523(a)(6) and 727(b)(2), (3), (4) and (5).

### A. DISCHARGEABILITY OF DEBT

Section 523(a)(6) provides:

"(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity;"

The debt the plaintiff seeks to have declared nondischargeable is represented by a judgment rendered by the Circuit Court of Virginia Beach on September 7, 1995. The judgment resulted from a jury trial in which Spencer, the debtor's landlord, was awarded a judgment for damages in the amount of $2,390.28 and attorney's fees in the amount of $2,500.00. Plaintiff's Exh. 15. The jury made the award to Spencer for damages sustained at the hands of the defendants in and about the house he rented to the Hattons.

The Hattons vacated the plaintiff's premises on January 1, 1994, which is when Spencer realized the full extent of the damages to his premises. The lawsuit in the Circuit Court of Virginia Beach was the result of the defendants' slovenly living habits, and now Spencer wants this Court to declare the jury's determination nondischargeable. The objection to the discharge of this debt places on the plaintiff the burden of convincing the court by the preponderance of the evidence that discharge of the particular debt should be denied. *Grogan v. Garner*, 498

U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Any such exception to discharge as sought here must be narrowly construed in favor of the debtors. *In re Hrim*, 196 B.R. 237, 241 (Bankr.N.D.N.Y.1993).

The squalor that the defendants created and chose to live in is shocking to one's sense of civility, and it evidences willful conduct on the part of the defendants. As a result, the Court finds that the treatment of the plaintiff's home rises to the level of willful and malicious conduct.

An injury to an entity or property may be malicious injury within this provision if it was wrongful and without just cause or excessive, even in the absence of personal hatred, spite or ill-will. The word 'willful' means 'deliberate or intentional', a deliberate and intentional act which necessarily leads to injury. Therefore, a wrongful act done intentionally, which necessarily produces harm and is without just cause or excuse, may constitute a willful and malicious injury.

3 Collier on Bankruptcy, Paragraph 523.16[1] (15th ed.). As has been stated by the Fourth Circuit, willful means deliberate and intentional. *First National Bank of Maryland v. Stanley (In re Stanley)*, 66 F.3d 664, 667 (4th Cir.1995) (citing *St. Paul Fire & Marine Ins. Co. v. Vaughn*, 779 F.2d 1003, 1009 (4th Cir.1985). A finding of malice may be implied from the acts and conduct of the debtors in light of the surrounding circumstances. *In re Stanley*, 66 F.3d. at 667–668. Malice as used in section 523(a)(6) may be found although the debtor has no subjective ill will toward the creditor and does not specifically intend to cause injury. *Id.* at 667. In sum, an act done "deliberately and intentionally in knowing disregard of the rights of another" is sufficiently willful and malicious to prevent the discharge of a debt. *Id.* at 667 (citing *St. Paul Fire & Marine Ins. Co.*, 779 F.2d at 1010). That standard is clearly satisfied under the evidence presented.

Furthermore, there is the state court judgement. In that action, the conduct of the defendants so outraged the jury that they awarded attorney's fees in excess of those sought by Spencer in his lawsuit. The

jury's verdict precludes this Court from relitigating the issues of the willfulness and maliciousness of the debtors' treatment of Spencer's house. The debtors are estopped from presenting those issues to the Court and the jury's determination, under these facts, is conclusive of the ultimate issue; i.e. the debt reflected in the judgment in the amount of $4,890.28 is nondischargeable. *Hayduk v. Page (In re Page),* 197 B.R. 61 (Bankr.N.D. Ohio 1996), see also *In re Ricketts,* 40 B.R. 676 (Bankr.D.Md.1984).

### B. OBJECTION TO DISCHARGE

However, there is much more to this case. The other allegations made by Spencer relate to the denial of the debtors' entire discharge under 11 U.S.C. § 727. The pertinent evidence presented at the trial indicated that: (1) Mr. Hatton was possessed of a life insurance policy, which he had borrowed against, and in which it was later determined that he had cash surrender value of $998.00; (2) the debtors had paid Mrs. Hatton's mother $1,200.00 by allotment in the year immediately preceding the filing; (3) the debtors had at the time of filing an undivided interest in a timeshare and in a travel park; (4) that Mrs. Hatton understated her income by the amount of a bonus received in the year prior to filing and Mr. Hatton's net monthly pay was likewise understated; (5) the debtors omitted from their schedules the existence of a lawsuit they had brought against Spencer seeking $50,000.00 in damages; (6) the debtors indicated that almost all of their consumer, unsecured debt was incurred the month before their filing; and (7) the debtors listed as a group many items of household furnishings without assigning a value for each item.

■ The creditor has the burden of proving its objections to discharge and the proper standard of proof is the preponderance of the evidence. *Farouki v. Emirates Bank International, Ltd.,* 14 F.3d 244, 249 (4th Cir.1994). Although the ultimate bur-

den of proof rests with the creditor, that "burden may shift to the debtor to provide satisfactory, explanatory evidence once the creditor has established a *prima facie* case". *Id.* at 249. Under section 727(a)(4), "fraudulent intent may be inferred from the Debtor's course of conduct or other circumstantial evidence". *In re Colburn,* 145 B.R. 851, 857 (Bankr.E.D.Va.1992). "Where the debtor has engaged in a pattern of omissions or committed numerous inaccuracies a presumption may be made that the debtor acted with fraudulent intent or acted with such reckless disregard for the truth as to be equivalent of fraud." *Id.* at 858 (citations omitted).

■ Both of the debtors acknowledged that they had each reviewed their Schedules and Statement of Affairs prior to signing and filing them. They also admitted at trial to the inaccuracy or omission of the foregoing information on their Schedules. The true facts are that the debtors fraudulently, confusingly and sloppily listed on their Schedules: (1) Mr. Hatton did not list any net interest in a life insurance policy; (2) the payments to Mrs. Hatton's mother which related to money she loaned to the debtors to purchase a time share interest in a campground in New York; (3) the petition contained no reference to an interest in real estate in Accomac County, Virginia; (4) Mrs. Hatton's income was listed without regard to her reimbursement for travel expenses and her bonus received in 1994 and 1995, which resulted in an understatement of her income by approximately $225.00 per month in 1994 and approximately $250.00 per month in 1995; and (5) Mr. Hatton's wages were understated by approximately $430.00 per month.

To illustrate the magnitude of the misstatements of income by the debtors on their Schedules and the Budget required with the Chapter 7 filing:

| Mr. Hatton's Income | | | Mrs. Hatton's Income | | |
|---|---|---|---|---|---|
| Scheduled: | $2,339.22 monthly | | Scheduled: | $1,023.86 | |
| | $11,432.76 Y–T–D | | | $8,132.20 Y–T–D | |
| L & E State [3]: | $2,800.52 monthly | . | Paystub [4] | $672.85 bi-weekly ($1,245.70) | |
| | $13,366.86 Y–T–D | | | $11,959.13 | |
| | Understated by | 14.46% | | Understated by | 32.00% |

Mrs. Hatton also testified that her sister paid $1,400.00 to settle the debtors' obligation to Thousand Trails, for a 1/500th interest in real estate in Accomac County, Virginia, which was not revealed on the debtors' bankruptcy filing, as well as the fact that the debtors paid $300.00 of the obligation within three weeks prior to their filing. Plaintiff's Exh. 21–25, 30. She testified further that she and her husband dealt with a paralegal in their counsel's office relative to completing their Schedules and Statement of Affairs; they apparently never reviewed those documents with either lawyer in the office! She also indicated that the paralegal was the one who told her to ignore her bonus when reporting her income on the bankruptcy filing papers. This advice from a lay person was ratified at the trial as being proper by counsel for the debtors. The failure to accurately and completely disclose all of the debtors' income is fraudulent, and is calculated to hinder, delay and defraud their creditors and their Chapter 7 trustee.

The debtors attempts to explain the information included and omitted from their petition were illogical at best. For example, Mrs. Hatton stated that they improperly listed the debt and payments within one year to her mother under the "Allotment Section" of the Statement of Affairs; however, there is no such section. Mrs. Hatton also claimed she did not list the payments to her mother as insider payments because she did not know what an insider was or who would be classified as an insider. She indicated that she provided her counsel with a listing for each item of personalty listed under Schedule B.4., but that the attorney or his paralegal made the decision to list all of the items together with an aggregate valuation. This is totally improper and unacceptable, and is bad advice. In their Amended Schedules the debtors improperly included an expense of $250.00 per month for an automobile Mrs. Hatton contemplated buying in the future.

The debtors also testified that they filed their Chapter 7 proceedings after the verdict was returned by the jury in the suit brought by Spencer, fearing that he would immediately begin garnishment proceedings. However, the judgment on the jury verdict was not entered until September 7, 1995; yet the debtors filed these proceedings on August 4, 1995 [5], after first paying off their debt to Thousand Trails on July 17 with the loan from Mrs. Hatton's sister.[6]

A case strikingly similar to the one *sub judice* is *In re Dreyer*, 127 B.R. 587 (Bankr. N.D.Tex.1991), which involved a son preparing and filing a bankruptcy petition on behalf of his father. The petition was hastily prepared and the schedules and statements were incomplete and inaccurate. The schedules showed that the debtor's corporation had no value, when if fact, it had substantial value. When questioned about various assets on and omitted from his schedules, the debtor finally

3. Mr. Hatton's Leave and Earnings Statement issued by the Navy indicates that he received pay for the month of July, 1995, the month of his Chapter 7 filing, in the amount of $2,800.52, with pay through July, 1995 amounting to $13,-366.86. Plaintiff's Exh. 28. His Schedules were amended on November 3, 1995 and contained the same income figures as the original Schedules filed in August.

4. Mrs. Hatton testified that she worked for Landmark Communications and received reimbursement for local travel and a monthly bonus, which she had received, although there was no guaranty of receiving it, throughout 1994 and 1995. Plaintiff's Exh. 20. Mrs. Hatton's income was unchanged on the Amended Schedules signed on November 3, 1995.

5. The Hattons paid their counsel on July 24, 1995, to file their Chapter 7 petition, which was filed August 4, 1995.

6. The debtors testified that they paid off their obligation to Thousand Trails just before they filed the bankruptcy petition in order to "get out from under the debt." Once again this explanation is implausible. The debtors stated that they paid off the debt, but claim they did not retain any ownership in the timeshare, which is certainly questionable legally. See Plaintiff's Exh. 30.

provided the information required by Bankruptcy Rule 1007(b). The *Dreyer* court appropriately held in several respects:

> The movant bears the burden of establishing actual intent to defraud under § 727(a)(2)(A), which may be inferred by the debtor's actions and may be proved by circumstantial evidence.
>
> A debtor has a paramount duty to carefully consider all questions posed on his schedules and statement of affairs and see that each question is answered completely in all respects.
>
> Congress enacted § 727(a)(4)(A) to ensure that debtors supplied dependable information on which they [the court and the trustee] can rely in administering the bankruptcy estate.... Taken as a whole, both the statements and the schedules were evasive and constituted an attempt by Mr. Dreyer to conceal his true financial situation.

*Id.* at 593–595 (citations omitted).

In *Dreyer*, Judge Akard found that the debtor attempted to excuse the shortcomings in his statements and schedules based on the fact that he relied on his counsel, albeit his son. Because Mr. Dreyer, as did the debtors here, read the statements and schedules and declared under penalty of perjury that the information was true and correct, he was held to be responsible for the information contained in and omitted from his filings. Based on the ruling in *Dreyer*, Spencer has carried his burden of proof in demonstrating that Mr. and Mrs. Hatton failed to provide true and accurate information on their Schedules and Statement of Affairs and are therefore not entitled to a discharge of their debts under sections 727(a)(2) and (a)(4). They cannot rely on the defense of advice of counsel, because the declaration they freely signed when completing their Schedules and Statement of Affairs indicates that those documents are true and correct to the best of their information and belief. Importantly, they supplied the information to their counsel for the preparation of their Schedules and Statement of Affairs. The debtors argue that the mistakes were *de minimis* and that some of the assets could have been exempted anyway, so there is no harm to the creditor. See *In re Whitcomb*, 140 B.R. 396 (Bankr. E.D.Va.1992). This assertion is not well taken as the prepetition transfer of assets and the serious misstatement of income are not *de minimis* in the context of this particular case and those are items that would have otherwise been part of the estate. The record also indicates that given their overall financial situation, this bankruptcy filing was targeted at one specific creditor, namely Spencer. This motivation coupled with the pattern of plainly inaccurate and misleading information leads to the conclusion that the debtors intended to hinder, delay and defraud a creditor under section 727(a)(2) and they clearly made a false oath under section 727(a)(4).

Finally, let the record be clear that sloppily prepared and inaccurate schedules and statements of affairs, such as those filed in this case, are not acceptable in this Division.

For the reasons stated, the debtors are not entitled to discharge their debt to Spencer and are not entitled to a discharge, and therefore, the objection of Spencer is **SUSTAINED**.