**In re Cynthia L. DUNCAN, Debtor.**

**Sherman B. Lubman, Trustee, Plaintiff,**

v.

**Cynthia L. Duncan, Defendant.**

**Bankruptcy No. 00–60558–DOT.
Adversary No. 03–03016–DOT.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

Oct. 12, 2004.

---

M. Maxine Cholmondeley, Richmond, VA, for Debtor.

Kevin A. Lake, Richmond, VA, for Trustee, Plaintiff.

## MEMORANDUM OPINION

DOUGLAS O. TICE, JR., Chief Judge.

Trial was held September 24, 2004, on trustee's complaint objecting to debtor's chapter 7 discharge. The trustee alleges that debtor made false oaths in that she made fraudulent misrepresentations in her sworn petition schedules and in testimony at two creditors' meetings concerning the true amount of her income, expenses and the value and nature of assets.

For reasons stated in this opinion, debtor's discharge will be denied pursuant to 11 U.S.C. § 727(a)(4)(A).

*Findings of Fact.*

PROCEDURAL HISTORY

Debtor filed this case under chapter 7 of the Bankruptcy Code on June 13, 2000.

At her initial meeting of creditors on July 12, 2000, debtor stated under oath that her schedules and statements were true and accurate. At this meeting, the trustee informed debtor that he intended to liquidate some of her assets.

On August 4, 2000, debtor filed a motion to convert her case to chapter 13, and an order of conversion was entered August 20, 2000. She filed her initial chapter 13 plan on August 18, proposing to pay a total of $40,150.00 over 60 months. Following an objection to debtor's plan, the court denied confirmation of the initial plan on December 6, 2000.

Debtor filed a first amended chapter 13 plan on December 18, this time proposing total plan payments of $55,969.00. Confirmation was denied on February 21, 2001.

On March 5, 2001, debtor filed a second amended chapter 13 plan that proposed total payments of $94,823.00. Confirmation was denied May 23, 2001.

Debtor filed a third amended plan on June 1, 2001, proposing total payments of $70,480.00. Confirmation was denied August 15, 2001, and on that same day the court granted the trustee's motion to reconvert the case to a chapter 7 due to debtor's failure to propose a confirmable plan.

The trustee conducted the meeting of creditors in the reconverted chapter 7 case on March 14, 2002, at which time debtor again testified under oath that all the information contained in her schedules and statements was true and accurate. Debtor also executed declarations with respect to all the schedules, statements, plans and other pleadings.

On February 6, 2002, the chapter 7 trustee filed a complaint objecting to debtor's discharge pursuant to Bankruptcy Code § 727(a)(4)(A).

## DEBTOR'S REAL PROPERTY

Debtor filed her initial petition schedules and statements over the period June 13–19, 2000. In debtor's initial schedule A, real property, she listed ownership in her residence located at 920 Grayfox Circle, City of Richmond, Virginia, with a value of $41,000.00; the schedule also revealed a secured claim against the property of $36,000.00. This real property is actually located in Henrico County, Virginia. Debtor amended schedule A on June 15, 2000, to lower the value of this property to $31,000.00, still subject to a secured claim of $36,000.00.

Debtor purchased 920 Grayfox Circle from her own funds at a foreclosure auction sale for $36,000.00. The transaction went to settlement on January 24, 2000. The Henrico County tax assessment value of the property for the year 2000 was $54,200.00.

Debtor's schedule D, creditors holding secured claims, in both debtor's initial filing and an amendment filed August 18, 2000, stated that Cloud Mortgage Services of Richmond held a deed of trust against 920 Grayfox Circle in the amount of $36,000.00.

## CLOUD MORTGAGE SERVICES, INC.

Debtor is the sole shareholder of Cloud Mortgage Services, Inc. Her schedule B, personal property, filed on June 13, 2000, lists her stockholder interest in this corporation at a value of $46,000.00. Her schedule B filed August 18, 2000, lists the value at $40,500.00.

Debtor's schedule D, creditors holding secured claims, filed on both June 13 and August 18, 2000, list Cloud Mortgage Services as holding a deed of trust on debtor's residence at 920 Grayfox Circle in the amount of $36,000.00 and a security agreement in a 1998 Ford automobile in the amount of $10,000.00. As stated above,

debtor's asset schedules listed her residence as subject to a secured claim of $36,000.00.

Debtor put up her personal funds to purchase 920 Grayfox Circle and the 1998 automobile, although both purchases were structured on paper as loans to debtor from Cloud Mortgage Services.[1]

Debtor's expense schedule J filed on June 19, 2000, and amended schedule J filed August 18, 2000, stated that debtor was making monthly payments to Cloud on the deed of trust and auto loan in the respective amounts of $316.00 and $200.00. Debtor has never actually made these payments at any time during her bankruptcy case. Her amended schedule J filed June 1, 2001, did not list these payments.

DEBTOR'S MONTHLY INCOME AND EXPENSE

Debtor has been engaged in various aspects of the mortgage business for approximately 27 years. Primarily she is a mortgage underwriter. She encountered financial problems leading to bankruptcy when in 1999 she lost employment paying approximately $50,000.00 per year and had to take a lower paying job with Solutions Mortgage, Inc. In August 2000 she obtained a contract position with Radian Guaranty, Inc., at a salary of not less than $6,000.00 per month. She worked at Radian throughout the balance of 2000 and through 2001 and 2002. In debtor's initial schedules of monthly income and expense filed on June 19, 2000, she reported in schedule I gross monthly wages of $1,500.03 and net income of $1,911.00; this consisted of $1,086.00 in net wages from Solutions Mortgage and $825.00 in "commissions." She claimed total monthly expenses in schedule J of $2,120.00.

Debtor's amended schedules I and J filed August 18, 2000, reported gross wages of $4,549.97, net wages of $3,184.98, and expenses of $2,510.00.

On June 1, 2001, debtor filed amended schedules I and J, which revealed gross monthly wages of $6,716.77, with net income of $4,282.46 and monthly expenses of $2,513.59.

In her Federal income tax returns, debtor reported gross income for years 2000 and 2001 in the respective amounts of $50,489.00 and $91,854.00.

*Discussion and Conclusions of Law.*

Section 727 of the Bankruptcy Code allows debtors to receive a general discharge of their debt in keeping with the purpose of bankruptcy law, to give honest debtors a fresh start "unhampered by the pressure and discouragement of preexisting debt." *See Farouki v. Emirates Bank Int'l, Ltd.,* 14 F.3d 244, 249 (4th Cir.1994) (quoting *Lines v. Frederick,* 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124 (1970)). However, provisions enumerated in § 727(a)(1)-(10) prohibit a discharge for those who "play fast and loose with their assets or with the reality of their affairs." *See id.* (quoting *Boroff v. Tully (In re Tully),* 818 F.2d 106, 110 (1st Cir.1987)); *First Union Nat. Bank v. Golob (In re Golob),* 252 B.R. 69, 75 (Bankr.E.D.Va.2000).

A leading treatise on bankruptcy law has stated:

The provisions denying a discharge to a debtor are generally construed liberally in favor of the debtor and strictly against the creditor. Courts have noted that "a total bar to discharge is an ex-

---

1. An objection to debtor's second amended plan stated that the State Corporation Commission reported on April 4, 2001, that Cloud was not in good standing, having failed to file

its year 2000 annual report or pay its year 2000 franchise tax. The trial record does not provide evidence of Cloud's current corporate status.

treme penalty." The reasons for denial of a discharge must be real and substantial rather than technical and conjectural. However, "[w]hile the law favors discharges in bankruptcy, it will not ordinarily tolerate the [debtor's] intentional departure from honest business practices where there is a reasonable likelihood of prejudice."

*See* 6 *Collier on Bankruptcy,* ¶ 727.01[4] (Alan N. Resnick & Henry J. Sommer, eds., rev.2003) (citations omitted).

The trustee seeks to deny debtor's discharge in bankruptcy under provisions of Code § 727(a)(4)(A), which provides

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account;

11 U.S.C. § 727(a)(4)(A).

■ In a proceeding to deny a debtor's discharge in bankruptcy, Bankruptcy Rule 4005 places the burden on the plaintiff, the trustee here, to prove the objection by a preponderance of the evidence. *Farouki v. Emirates Bank Intern., Ltd.,* 14 F.3d 244, 249 (4th Cir.1994). However, a debtor may be called upon to offer rebuttal evidence once the plaintiff has established a prima facie case for denial of discharge. *Id.* at 249; *T.R. Press, Inc. v. Whitcomb (In re Whitcomb),* 140 B.R. 396, 398 (Bankr.E.D.Va.1992).

■ In order for discharge to be denied under § 727(a)(4)(A), "the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with intent to defraud." *Fed. Deposit Ins. Corp. v. McFarland (In re McFarland),* 197 B.R. 222, 224 (Bankr.E.D.Va.1995). A false statement or omission in a debtor's schedule or statement of financial affairs qualifies as a false oath. *See Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 251–52 (4th Cir.1987); *Keeney v. Smith (In re Keeney),* 227 F.3d 679, 685–86 (6th Cir.2000); *Chalik v. Moorefield (In re Chalik),* 748 F.2d 616, 618 (11th Cir.1984). Whether a particular debtor has satisfied the knowing, willful, and intent elements of § 727(a)(4)(A) is a question of fact. *See In re McFarland,* 197 B.R. at 224. Because the average debtor will deny the fraudulent intent alleged by a party seeking denial of the debtor's discharge, a court may decide the issue upon circumstantial evidence or "inferences drawn from a course of conduct." *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d at 252.

■ Section 727(a)(4)(A) also requires that the subject of a false oath be material. "The subject matter of a false oath is 'material' and thus sufficient to bar discharge if it bears a relationship to the debtor's business transactions or estate, concerns the discovery of assets or business dealings, or the existence and disposition of property." *In re McFarland,* 197 B.R. at 224.

■ Trustee's complaint in this case alleges that debtor made false oaths regarding her income, expenses, and the nature and value of her assets by misrepresenting the true amount of these items on her schedules and in falsely representing under oath at her creditor meetings that the schedules were accurate. Although the debtor does not remember signing or reviewing all of her petition and schedules, the parties agreed at trial that debtor has not contested her petition and schedules, which are included in the trial record. Sept. 21 Tr. 8:8–22, 13:18–21, 16:5–23. Because debtor does not dispute that her schedules reflect her assertions regarding her property, income and expenses the court concludes that the petition schedules

contain representations by debtor under oath. She verified the accuracy of her schedules under oath at two meetings of creditors in the chapter 7 case. This leaves the issue of whether false representations were made knowingly and fraudulently.

In support of his allegations, the trustee argues that 1) debtor falsely understated her income in a monthly income schedule filed on August 18, 2000, 2) falsely claimed the existence of deed of trust and automobile loans in her liability schedules, 3) falsely claimed monthly payments for these loans on her monthly expense schedules filed on June 19 and August 18, 2000, and 4) falsely understated the value of her residential real property.

## UNDERSTATEMENT OF INCOME

Debtor filed this case, as a chapter 7 on June 13, 2000, and converted to chapter 13 on August 4, 2000. On August 18, she filed an amended schedule I, monthly income, that reported gross wages of $4,549.97. At trial, debtor testified that she amended her income schedule because she had obtained new employment from which she received monthly gross wages of approximately $6,000.00, an increase from the monthly gross wages of $1,500.03 she earned previously and reported in her original schedule I. Sept. 21 Tr. 52:3–14. Debtor stated her reason for reporting only $4,549.97 of monthly gross income even though she had received an increase to approximately $6,000.00 was her intent to report monthly income based on an average of the previous salary and the new salary.

Debtor's rationale for reporting the lower income amount is not persuasive. It is similarly self serving and incorrect as her testimony at trial that it was unnecessary

for her to include an estimate of bonus income because bonuses are not guaranteed. A chapter 13 debtor's income schedule is particularly important because disposable income determines the chapter 13 plan payment to the trustee. Thus, reason dictates that the schedule must reflect current income. By understating her income, debtor deceived the trustee and creditors concerning her ability to fund a plan. Her under reporting of income continued at least from August 2000 until June 2001, during which time debtor proposed several unconfirmable plans.

On June 1, 2001, debtor amended her income and expense schedules and reported gross monthly wages of $6,716.77. These reported wages would have supported her efforts to confirm a chapter 13 plan until the case was converted back to a chapter 7 on August 15, 2001. However, her 2001 income tax return lists income from wages of $91,854.00. This would be an average of $7,654.50 per month. These figures suggest that debtor continued to understate monthly wages throughout her chapter 13 case.

## DEED OF TRUST AND AUTOMOBILE LOANS

Debtor's schedules stated that her residence was subject to a deed of trust in the amount of $36,000.00, held by Cloud Mortgages Services, Inc. The schedules also stated that debtor owned a 1998 Ford Taurus subject to a security interest held by Cloud Mortgage Services based upon a loan in the amount of $10,000.00. Debtor was the sole owner of Cloud Mortgage Services, whose corporate existence is not proven.[2] Because debtor's own funds were used to purchase the real property and automobile, the court considers the

---

**2.** Although the trustee has the ultimate burden of proof in this case, the court considers the evidence surrounding the so-called Cloud loans to have shifted the burden to debtor to prove the legitimacy of the loans, including Cloud's status as a corporation.

loans as shams and their listing in debtor's schedules as false.

To compound matters, in monthly expense schedules filed on June 19 and August 18, 2000, debtor falsely claimed to be making monthly payments on the two loans to Cloud Mortgage Services. Thus, the two payment amounts totaling $516.00 per month reduced debtor's disposable income upon which she based several proposed chapter 13 plans.

## SCHEDULED VALUE OF REAL PROPERTY

In January 2000, debtor purchased her current residence at foreclosure for a price of $36,000.00. This is the same property listed subject to a Cloud Mortgage Services deed of trust. The 2000 tax assessment for the realty was $54,200.00. Debtor's initial asset schedules filed June 13, 2000, list this property at a value of $41,000.00. In an amended schedule filed two days later, she listed the property at a value of $31,000.00. At trial, debtor testified that she reduced the reported value because the house did not have a kitchen, and a realtor had told her that the lack of a kitchen reduced the value by $5,000.00.

## SUMMARY

The debtor's sworn schedules verified by sworn testimony represent that her home and automobile were encumbered by a deed of trust and security agreement and that she was making monthly payments toward these debts. The loans were shams, and debtor did not make payments toward these debts. At the very least these circumstances shift the burden to debtor to demonstrate that the so-called loans had a legitimate purpose. As the record stands, the court must find that debtor falsely represented the existence of the loans and her loan payments. These representations were material to debtor's chapter 13 case. Although debtor's understating the value of her real property, standing alone, would not be strong evidence of fraudulent intent, when combined with her other misrepresentations, it is additional evidence of debtor's pattern of filing inaccurate and misleading schedules.

The court finds that debtor has engaged in a pattern of omissions and inaccuracies in a failed effort to propose a chapter 13 plan by which she might defeat the chapter 7 trustee's efforts to liquidate her unencumbered property. This pattern demonstrates that debtor's false representations in her schedules were made knowingly and fraudulently. *See Spencer v. Hatton (In re Hatton)*, 204 B.R. 470, 473, 475–476 (Bankr.E.D.Va.1996), *aff'd* 204 B.R. 477 (E.D.Va.1997)(Debtors "fraudulently, confusingly and sloppily listed on their schedules" their general financial affairs and transactions, and "the failure to accurately and completely disclose all of the debtors' income is fraudulent, and is calculated to hinder, delay and defraud their creditors and their Chapter 7 trustee."); *see also In re Dreyer*, 127 B.R. 587, 595 (Bankr.N.D.Tex.1991)(the court found, "Congress enacted § 727(a)(4)(A) to ensure that debtors supplied dependable information on which they can rely in administering the bankruptcy estate. [The debtor] signed the petition, statements, and schedules ... under penalty of perjury. His action constituted an oath in the bankruptcy proceeding. Taken as a whole, both the statements and the schedules were evasive and constituted an attempt by [the debtor] to conceal his true financial situation."), followed by *In re Hatton* at 477. A separate order will be entered denying debtor's discharge in bankruptcy.