In re Joseph M. CARBAUGH, Debtor.

W. Clarkson McDow, Jr., United States Trustee for Region Four, Plaintiff,

v.

Joseph M. Carbaugh, Defendant.

Bankruptcy No. 10–50816.
Adversary No. 10–05044.

United States Bankruptcy Court,
W.D. Virginia,
Harrisonburg Division.

June 29, 2011.

Margaret K. Garber, Office of the U.S. Trustee, Roanoke, VA, for Plaintiff.

Douglas W. Harold, Jr., Stephens City, VA, for Defendant.

## DECISION AND ORDER

ROSS W. KRUMM, Bankruptcy Judge.

An evidentiary hearing was held on May 18, 2011, to consider the United States Trustee's Objection to Discharge. After considering the arguments of the parties and the evidence presented at trial the Court makes the following findings of fact and conclusions of law.

### *Facts*

The Debtor filed his Chapter 7 petition on May 13, 2010. At the time he filed his petition the Debtor was represented by the Eryk Boston, Esquire, an associate attorney in the offices of Marilyn Ann Solomon, Attorney at Law. Immediately prior to filing his petition the Debtor met with Mr. Boston at his office to go over the details and information needed to file a Chapter 7 petition.

In his Chapter 7 petition, the Debtor listed the following items on Schedule B of the petition: (1) $5.00 in a "Garnished Checking acct Bank of Clarke Co"; (2) $1,240.00 in a "Garnished Money Market acct VSB"; (3) $1,537.00 in a "Garnished Money Market acct Wachovia"; (4) $2,100 worth of household goods, pots, pans, furniture; (5) a pistol valued at $150.00; (6) $21,716.00 in a "IRA Invesco"; (7) $5,062.00 in a "IRA Fidelity"; (8) $1.00 from 2010 federal and state income tax refunds, "prorated"; (9) a 1984 Mercury Grand Marquis valued at $250.00; and (10) a "1983 Trailer" valued at $100.00.

On June 18, 2010, the Chapter 7 Trustee, W. Stephen Scott, Esquire, conducted the Section 341 meeting of the Debtor's creditors. At the meeting Mr. Scott asked the Debtor a series of questions regarding his debts and assets. Through these questions Mr. Scott was able to ascertain that the Debtor was a farmer and that he had failed to disclose on his Schedule B significant amounts of hay, either still growing or that had been sold to customer, as well as a substantial number of machines and farm equipment, and two accounts receivables.

On June 23, 2010, the Debtor filed an Amended Schedule B. In Amended Schedule B the Debtor added the following items: (1) Cattle: 19 adults, 10 calves, valued at $14,150.00; (2) 3000 Hay Bales valued at $3,000.00; (3) International 450 Plow valued at $750.00; (4) "One forth interest in four tractors, combine, 1976 truck, 1950 truck, 5 wagons, Taylor Disc, 2 elevators, 2 gears, drag" valued at $8,775.00; (5) Kick wagon valued at $1,000.00; (6) H & S Rake valued at $1,500.00; and (7) JD 347 Kick Bailer, NH 640 Roll Bailer, NH 411 valued at $13,350.00. Additionally, the Debtor included the two accounts receivable owed by Hedgebrook Farm and Joe and Trish Bush, respectively (collectively hereafter the "Accounts Receivables"). The total value of Accounts Receivables is $20,829.00.[1]

---

1. Amended Schedule B, *In re Carbaugh,* Case No. 10–50816–HAR (Bankr. W.D. Va. June 23, 2010).

After the Debtor filed his Amended Schedule B, Mr. Scott commissioned Dick Heatwole to inspect the Debtor's real property to locate and value the previously undisclosed hay and equipment. When Mr. Heatwole arrived at the Debtor's farm, located at 5415 Passage Lane, Stephens City, Virginia, he and the Debtor proceeded to inspect the Debtor's farm in search of the equipment and hay. Mr. Heatwole was able to locate the following pieces of farm equipment and hay bales: (1) John Deere 2840 Diesel W/ Loader; (2) John Deere Diesel; (3) John Deere 2010 Gas; (4) International 450 Bottom Plow; (5) Taylor Way 10' Cut A Way Disc; (6) 1950 GMC Truck W/ 14' Stake Bed; (6) 1976 International Truck W/ 12' Dump Bed; (7) 30' Mayraft Hay Grain Elevator; (8) 24' Skeleton Elevator; (9) Massey Ferguson 550 Combine W/12' Grain & Corn Heads; (10) New Holland 640 Round Baler; (11) New Idea 109 Broadcast Seeder; (12) John Deere 347 Square Baler W/Kicker; (13) New Holland 411 Disc Bine; (14) H & S Dual Wheel Rake; (15) New Holland 1033 Hay Stacker; (16) 8 Hay Wagon W/ Hay Racks; (17) 2 Flat Bed Wagons; (18) 2 Wagon Running Gears (parts only); (19) Johnson 500 gal. Field Sprayer; (20) Cultipacker; (21) Pequea Hay Tedder; (22) Woods Bush Hog; (23) John Deere 9' Trailer Disc; (24) Single Wheel Rake; and (25) approximately 1000 square bales of hay (collectively all 24 pieces of equipment and the bales of hay are hereafter "Equipment and Hay").[2] The New Idea 109 Broadcast Seeder, John Deere 9' Trailer Disc, the Single Wheel Rake, the Cultipacker, and the Woods Bush Hog were owned by the Debtor but not disclosed in Amended Schedule B. Additionally, Amended Schedule B erroneously listed the number of hay bales at 3,000 when in reality there was only 1,000 bales of hay.

On August 16, 2010, after Mr. Heatwole inspected the Debtor's property, the Debtor filed a Second Amended Schedule B. On the Second Amended Schedule B the Debtor added to those items previously listed on the original Schedule B and Amended Schedule B the following items: (1) Single wheel rake; (2) Seed Sprayer; (3) Drag; (4) 550 Combine; (5) John Deere Disc; (6) Hitch Spreader; (7) 2 kick wagons; (8) Hay Stacker; (9) Cultipacker; (10) 2 flat bed wagons; (11) Oliver Disc; and (12) a one fourth interest in 5 inherited kick wagons.[3]

The Trustee asserts that the Debtor concealed his interest in the Accounts Receivables and the Equipment and Hay with the intent to hinder, delay, or defraud creditors or an officer of his estate. Therefore, the Trustee contends, the Debtor's discharge from bankruptcy should be denied pursuant to 11 U.S.C. § 727(a)(2). Additionally, the Trustee contends that because the Debtor knowingly and fraudulently failed to disclose his interest in the Accounts Receivables and the Equipment and Hay, he made a false oath both on his bankruptcy petition and at the Section 341 meeting and therefore, should be denied discharge from bankruptcy under § 727(a)(4)(A).

### *Discussion*

 *In re Hatton,* 204 B.R. 477, 482 (E.D.Va.1997) observes that the "The discharge statute, by its very nature, invokes competing considerations." *Hatton* states that "One of the foremost purposes of the bankruptcy act is to 'relieve the honest debtor from the weight of oppressive in-

---

**2.** U.S. Trustee's Exhibit 10, *U.S. Trustee v. Carbaugh (In re Carbaugh),* AP No. 10–05044–HAR (Bankr. W.D. Va. April 22, 2011).

**3.** Second Amended Schedule B, *In re Carbaugh,* Case No. 10–50816–HAR (Bankr. W.D. Va. Aug. 16, 2010).

debtedness, and permit him to start afresh free from' his former obligations." *Id.* at 482 (quoting *In re Ingle* 70 B.R. 979, 982 (Bankr.E.D.N.C.1987)). *Hatton* goes on to state that "On the other hand, the 'solicitude of Congress ... stops at the debtor who does not measure up to that appealing image' of the 'honest but unfortunate debtor.'" *Id.* In weighing these competing considerations, *In re Kontrick* 295 F.3d 724 (7th Cir.2002), *aff'd,* 540 U.S. 443, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004) (quoting *In re Zarzynski,* 771 F.2d 304, 306 (7th Cir. 1985)) provides guidance when it states that "In bankruptcy, 'exceptions to discharge are to be construed strictly against a creditor and liberally in favor of the debtor.'" Ultimately, the determination of whether to deny a debtor's discharge under § 727(a) is a question of fact for the Court to determine. *In re Duncan,* 318 B.R. 648, 652 (Bankr.E.D.Va.2004). It is with these considerations in mind that the Court now addresses the issues surrounding denial of the Debtor's discharge pursuant to 11 U.S.C. § 727.

### A. Denial of Discharge Under 11 U.S.C. § 727(a)(4)

#### I. Applicable Law

■ 11 U.S.C. § 727(a)(4)(A) states,

(a) The court shall grant the debtor a discharge, unless—

(4) the debtor knowingly and fraudulently, in or in connection with the case—

(A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A) (West, 2010). *Duncan,* holds that "[i]n order for discharge to be denied under § 727(a)(4)(A), 'the debtor must have made a statement under oath which he knew to be false, and he must have made the statement willfully, with the intent to defraud.'" *Duncan,* 318 B.R. at 652. *Duncan* goes on to hold that

a "false statement or omission in a debtor's schedule or statement of financial affairs qualifies as a false oath." *Id.*

■ Additionally, the statement or omission must be material. *Id. In re Harlow,* 107 B.R. 528, 531 (Bankr.W.D.Va. 1989) defines materiality for purposes of § 727(a)(4)(A) as a statement or omission that "is related to the debtor's business transactions, or if it concerns the discovery of assets, business dealings, or the existence or disposition of the debtor's property."

■ Lastly, *In re Colburn,* 145 B.R. 851, 857 (Bankr.E.D.Va.1992) holds that courts may infer fraudulent intent "from the Debtor's course of conduct or other circumstantial evidence." *Colburn* adds that "[w]here a debtor has engaged in a pattern of omissions or committed numerous inaccuracies a presumption may be made that the debtor acted with fraudulent intent or acted with such reckless disregard for the truth as to be the equivalent of fraud." *Id. See also, Duncan,* 318 B.R. at 652 (citing *Williamson v. Fireman's Fund Ins. Co.,* 828 F.2d 249, 252 (4th Cir.1987)).

#### II. Omissions on the Debtor's Original Schedule B

■ The Court finds that there were two instances wherein the Debtor failed to disclose the extent of his Accounts Receivables and his Equipment and Hay.

The first was his failure to disclose said items on his original Schedule B. It is undisputed that the Debtor did not disclose either of the Accounts Receivables or any of the Equipment and Hay on his original Schedule B. It is also undisputed that the Accounts Receivables and the Equipment and Hay should have been disclosed on the original Schedule B. The Court, however, finds that the Debtor did not possess the intent to hinder, delay or

defraud creditors or an officer of his estate when he failed to disclose the Accounts Receivables and the Equipment and Hay on his original Schedule B.

In making its finding the Court finds two lines of testimony particularly persuasive, the first from the Debtor himself and the second from the Debtor's previous attorney, Eryk Boston, and his superior, Marilyn Solomon, Esquire.

The Debtor testified that it was his understanding that since he was in a personal bankruptcy only items he deemed to be personal in nature were to be included in his bankruptcy proceeding. These items included such things as a car, a pistol, furniture, and the other items listed on his original Schedule B. The Debtor further testified that he considered all of his Equipment and Hay as well as the Accounts Receivables to be property of his farming business and thus, not part of his personal bankruptcy estate. Additionally, the Debtor believed that even if the Equipment and Hay were to be included in his personal bankruptcy estate, that they were fully covered by what he termed a "tools of trade exemption" and thus, did not need to be disclosed.

Mr. Boston testified that at the time he was preparing the Debtor's bankruptcy petition he "was basically going for quantity of work as much as possible and [he does] not contest in any way that the quality of the work suffered because [he] was pushing to get them [bankruptcy cases], as many as [he] could done as quickly as [he] could done."[4] Indeed, Mr. Boston stated that he was preparing bankruptcy petitions for his various clients while running on "autopilot pattern" and was just "going through the motions over and over in the same manner...."[5] The result of Mr. Boston's systemic incompetence was, as Ms. Solomon testified, that in "[e]very pending bankruptcy [that Mr. Boston was preparing petitions on] .... [e]very petition that I went over was inaccurate, every one of them...." Transcript Pg. 84. Additionally, Ms. Solomon testified Mr. Boston confessed to her that "he'd been giving everyone $5.00 [in the debtors' bank accounts regardless of the actual amount present], he'd been using a canned list for household goods."[6]

Based upon these strands of testimony, the Court finds that a tragic and completely avoidable situation arose in which the Debtor, armed with erroneously held beliefs concerning what constitutes property of the bankruptcy estate, was guided by an attorney, Mr. Boston, who did not care about discovering the true nature and extent of the Debtor's assets but had instead adopted the incredibly lazy and incompetent procedure of giving all debtors he dealt with, including this Debtor, the same items of personal property in an attempt to pump out as many cases as he could. The result of this disastrous combination was that the Debtor was not informed by Mr. Boston of what truly constitutes property of the estate and thus, did not question the fact that his original Schedule B did not include any Equipment and Hay or the Accounts Receivables.

Given the extraordinary amount of attorney misconduct that resulted in the Debtor's failure to disclose the Accounts Receivable and the Equipment and Hay on his original Schedule B, the Court cannot find that the Debtor possessed the requisite intent to hinder, delay, or defraud his creditors or an officer of his estate with

---

4. Transcript Pg. 110 *U.S. Trustee v. Carbaugh (In re Carbaugh)*, AP No. 10–05044 (Bankr. W.D. Va. May 31, 2011).

5. Transcript Pg. 105.

6. *Id.*

regard to his omissions on the original Schedule B.

### III. Omissions on Debtor's First Amended Schedule B

The second instance of omission on the part of the Debtor was his failure to fully disclose all of his Equipment and Hay on his first Amended Schedule B. For the following reasons the Court finds that the Debtor intentionally committed this omission and thus, should be denied his discharge pursuant to § 727(a)(4).

As is discussed above, at the time the Debtor filed his original Schedule B he possessed the erroneous belief that because he was in personal bankruptcy he did not have to disclose items used in his farming business. Additionally, the Debtor believed that even if the equipment used in his farming business were to be included, they were protected by what he termed a "tools of the trade exemption" and thus, he did not need to disclose the equipment.[7] These beliefs, however, were quickly cast aside by Mr. Scott, who during the Section 341 meeting informed the Debtor of his need to include all of his accounts receivables, equipment, and hay, and informed him that he had not claimed a tools of the trade exemption and that even if he had, he would not be able to exempt all of his equipment under the exemption.[8]

After learning of his duties to disclose, the Debtor filed his first Amended Schedule B and made the additions previously detailed. However, the Debtor's first Amended Schedule B did not include all of the Debtor's equipment because when Mr. Heatwole inspected the Debtor's property, the Debtor direct Mr. Heatwole to various items of equipment that were not included on his first Amended Schedule B. There

was much testimony and argument regarding the fact that the Debtor was the one who alerted Mr. Heatwole to the presence of items not included on the first Amended Schedule B. The Debtor asserts that he could not have had an intent to hinder, delay, or defraud creditors or an officer of the estate by failing to disclose the additional items on his first Amended Schedule B because he was the one who lead Mr. Heatwole to the items.

The Court, however, views the Debtor's actions in leading Mr. Heatwole to the items not disclosed on the first Amended Schedule B as uncontroverted proof that the Debtor knew exactly what pieces of equipment he owned. The Debtor chose to disclose certain assets on his first Amended Schedule B and chose to omit other assets from said schedule. It was not until a representative of the Chapter 7 Trustee's office came to visually inspect the Debtor's property that the Debtor chose to disclose the full extent of his equipment. In failing to disclose all of his equipment on his first Amended Schedule B, the Court finds that the Debtor may not hide behind the veil of ignorance of the law. The Debtor was informed by Mr. Scott at the Section 341 meeting that he needed to amend his original Schedule B to disclose all of his equipment and that he was not protected by the tools of the trade exemption as he had previously envisioned. Even in light of these revelations, the Debtor chose to disclose only a portion of his equipment. Also, the Court finds that the Debtor may not plead that he simply forgot the extent of his property when filling out his first Amended Schedule B. The Debtor is a third generation farmer who has lived on and farmed the same property for nearly his entire life. Addi-

---

7. U.S. Trustee's Exhibit 2, *U.S. Trustee v. Carbaugh (In re Carbaugh)*, AP No. 10–05044–HAR (Bankr. W.D. Va. April 22, 2011).

8. U.S. Trustee's Exhibit 2.

tionally, the Debtor holds a degree in religion from Shenandoah University. Lastly, the Debtor testified that he included depreciation on his equipment on his income tax returns. The Court finds it inconceivable that the Debtor, with as much farming experience as he possess and the intelligence needed to complete a four-year course of study at a university, would simply forget a large number of items that he uses in his farming operation, the very same operation that has been his sole livelihood for many years. Therefore, the Court finds that the Debtor either intended to hinder, delay, or defraud his creditors or an officer of his estate by not disclosing all of the pieces of equipment he knew he possessed on his first Amended Schedule B, or that he possessed a reckless indifference for the truth, which under *Colburn* raises the presumption of an intent to hinder, delay, or defraud. The Court finds that the Debtor has not rebutted the presumption of intent to hinder, delay, or defraud.

Additionally, the Court finds that the equipment not disclosed on the first amended Schedule B concerns the discovery of assets and the existence of the Debtor's property and thus, is material.

Therefore, the Court finds that the U.S. Trustee has satisfied all elements of proof required by § 727(a)(4) and thus, the Court finds that the Debtor's discharge should be denied under § 727(a)(4) for failing to properly disclose all of his assets on his first Amended Schedule B. Having determined that the Debtor's discharge shall be denied under § 727(a)(4) there is no need to determine whether the Debtor's discharge should be denied under § 727(a)(2). Accordingly, it is

### ORDERED

That the Debtor's discharge is hereby **DENIED** pursuant to 11 U.S.C. § 727(a)(4).

Copies of this Decision and Order are directed to be sent to counsel for the Debtor, Douglas W. Harold, Jr., Esquire, to counsel for the U.S. Trustee, Margaret K. Garber, Esquire, and to the Chapter 7 Trustee, W. Stephen Scott, Esquire.